## ELIZABETH McEVERS BAYARD ET AL.

### v.

## JAMES McGRAW ET AL.

1. MECHANIC'S LIEN—WAIVER.—Receiving a conveyance of real estate as part payment of a claim for erecting buildings thereon, is not a waiver of a mechanic's lien for the residue, any more than the acceptance of money as part payment would be.

2. DELIVERY IN ESCROW—NOT A WAIVER PRO TANTO.—It is apparent from the testimony in this case, that the deed was never in fact delivered or accepted absolutely. The note, which was the principal, was held in *escrow*, and the deed, which was only the incident, was placed upon record to anticipate the lien of certain judgments against the grantor, upon his promise to remove the incumbrance, such delivery and acceptance is not to be regarded

Bayard et al. v. McGraw et al.

as payment or extinguishment of the lien, *pro tanto*, as between the parties.

3. TAKING THE NOTE OF THE DEBTOR.—The taking of the debtor's note is not necessarily, and without regard to the intention of the creditor as to the ultimate effect upon the liability of the debtor, a payment of the debt or waiver of the lien. If such is the intention, or if the actual effect of enforcing the lien after the taking of the note would be to subject the debtor to a double liability, it is a waiver, otherwise not.

4. NEGOTIATION OF A NOTE SO GIVEN—OFFER TO SURRENDER.—The note being taken for the accommodation of the debtor, who is in default and unable to pay, and with the understanding that it is to be negotiated ; the act of negotiating the same adds no force to the act of taking it, nor would the further act of proceeding to judgment thereon by the holder. But in either case, the lien creditor, before he can have his decree, must be in control of the note or judgment, and offer to surrender or cancel the same.

5. PAYMENT OF CLAIMS BY MORTGAGER—SUBROGATION.—The court do not find that the case as made, is such as to entitle appellant's intestate or his representatives to be subrogated to the rights of the creditors, whose liens he discharged, since what he did in that respect was voluntary and not necessary to protect his own interest in the property.

6. PROCEEDS OF SALE UNDER DECREE—MODE OF APPLICATION.—The decree ascertained the several amounts by applying a credit of $1,200 for brick furnished and used in six of the houses, to the whole claim, instead of to those particular houses, and directed a sale of the premises, in separate lots, but that the proceeds should be applied on the aggregate, and not on the amount due upon the lots sold, respectively, thus exposing one lot to sale for what might be due upon another. Such an apportionment of the credit and order of sale is contrary to the statute.

7. LIEN NOT REGULATED BY THE CONTRACT—CONSTRUCTION OF STATUTE.—The lien is not given or regulated by the contract, but by the statute, which is in derogation of the common law, and must be strictly construed. The statute gives a lien upon lots and the improvements thereon only for the work done and materials furnished towards the improvement of the lots respectively.

8. PARTIES—CESTUI QUE TRUST SHOULD BE MADE A PARTY.—In a proceeding to enforce a mechanic's lien, both the trustee and *cestui que trust* should be made parties, and a failure to commence proceedings against the *cestui que trust* until after the expiration of the time limited by the statute for the commencement of proceedings to enforce a mechanic's lien, will have the effect of postponing the lien of the petitioner to that of the *cestui que trust*. Making the trustee named in the deed of trust a party within the time limited, cannot affect the rights of his *cestui que trust*.

ERROR to the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

Mr. JOHN M. GARTSIDE, for plaintiffs in error ; that a party

cannot make one case by his pleading, and obtain relief on another made by the proof, cited Tracey et al. v. Rogers, 69 Ill. 662.

As to waiver of lien by taking land: Clark v. Moore, 64 Ill. 273; Brady v. Anderson, 24 Ill. 112; Kinzey v. Thomas, 28 Ill. 502.

By receiving and negotiating the note of the debtor: Clement v. Newton, 78 Ill. 427; Teaz v. Christie, 2 E. D. Smith, 631; Scott v. Ward, 4 Green (Iowa), 112; Hawley v. Ward, 4 Green (Iowa), 39; Green v. Fox, 7 Allen, 88; Grant v. Strong, 18 Wall. 623; Phillips on Mech. Liens, § 281; Scott v. Robinson, 21 Ark. 202; Doub v. Barms, 4 Gill. 1; Gorman v. Sayner, 22 Mo. 137.

That defendants in errror have lost their right to a lien by their own laches: Drew v. Kimball, 43 N. H. 282; Bigelow on Estoppel, 453; 3 Washburn on Real Prop. 78; Quirk v. Thomas, 6 Mich. 78; Mitchell v. Reid, 7 Cal. 204.

Upon the question of Bayard's right to be subrogated to the rights of those creditors whose claims he had paid: Jacques et al. v. Falkney et al. 64 Ill. 87; Billings v. Sprague, 49 Ill. 509; City Nat. Bank v. Dudgeon, 65 Ill. 12.

The mode of charging the premises, adopted in the case, is fatal to the decree: Croskey et al. v. N. W. M. Co. 48 Ill. 481; Smith v. Moore, 26 Ill. 393; N. Pres. Ch. v. Jevne et al. 32 Ill. 214; Howett v. Shelby, 54 Ill. 151; Tracey et al. v. Rogers, 69 Ill. 662; Lunt v. Stephens, 75 Ill. 507.

Suit was not commenced against Bayard the *cestui que trust* within the time prescribed by the statute. Where a party is made defendant by amendment subsequent to the filing of the petition, suit is not commenced as against such party until he is so made defendant: Dumply v. Riddle, 1 Chicago Law J. 230; Miller v. McIntyre, 6 Pet. 61; Crowl v. Neagle, 1 Chicago Law J. 377.

The rights of a person not made a party to a suit, are not affected by any proceedings under it: Broom v. Goolsby, 34 Miss. 437; Gormen v. Judge, etc. 27 Mich. 140; Kelly v. Chapman, 13 Ill. 530; Williams v. Chapman, 17 Ill. 422; Lomax v. Dore, 45 Ill. 379; Angell on Liens, § 330; Story's Eq. Pl. § 904.

A *cestui que trust* is a necessary party to a proceeding to enforce a mechanic's lien: Phillips on Mec. Liens, § 395; Hauser v. Hoffman, 32 Mo. 334; Christien v. Manderson, 2 Penn. 363; Raymond v. Ewing et al. 26 Ill. 329; Williams v. Chapman, 17 Ill. 423; Kimball et al. v. Cook, 1 Gilm. 423; Kelly et al. v. Chapman, 13 Ill. 530; Steigleman v. McBride, 17 Ill. 300; Lomax v. Dore, 45 Ill. 379; Greenleaf v. Beebe, 80 Ill. 520.

The *cestui que trust* cannot be bound by the decree by reason of his trustee being made a party defendant: Hall et al. v. Sullivan Railway, Redfield on Railways, 465; Calvert on Parties, 212; Allen v. Knight, 5 Hare, 272; Kirk v. Clark, Eng. Ch. Pr. 275; Calverly v. Phelp, 6 Madd. 144; Hamm v. Stevens, 1 Vern. 110; Adams v. St. Leger, 1 Ball. & B. 184; Douglass v. Horsfall, 2 Sim. & St. 185; Wilson v. City Bank, 3 Sumner, 428; Green v. Sisson, 2 Curtis, 176; Stimpson v. Rogers, 4 Blatch. 337; Com'rs etc. v. Thayer, 4 Otto, 645; Curtis et al. v. Leavitt, 15 N. Y. 194.

Upon the question of *lis pendens:* 3 Sugden on Vendors, 322; Freeman on Judgments, § 195; Anon, 1 Verm. 318; Murray v. Ballou, 1 Johns. Ch. 576; Hayden v. Bachlin, 9 Paige Ch. 513; Hemmington v. Hemergton, 27 Mo. 560; Allen v. Mendiville, 26 Miss. 397; Leich v. Wells, 48 N. Y. 611; Powell v. Wright, 7 Beavan; Grant v. Bennett, 8 Chicago L. N. 379.

Messrs. SCOVILLE & BAYLEY, for defendants in error; that taking and negotiating the note of the debtor is not a waiver of the lien, cited Phillips on Mec. Lien, § 276; Van Court v. Bushnell, 21 Ill. 627; Butts v. Cuthbertson, 6 Geo. 166; Greene v. Ely, 2 Greene (Iowa) 508; Graham v. Colt, 4 B. Mon. 61; Phillips on Mec. Lien, 394; Muir v. Cross, 10 B. Mon. 277; Sweep v. James, 2 R. I. 270; Morton v. Austin, 12 Cush. 389; Edwards v. Derrickson, 4 Dutch. 39.

That receiving and recording the deed did not constitute a waiver of the lien: Bank of Columbia v. Haynes, 1 Pet. 455; Dorr v. Fisher, 1 Cush. 271; Rutter v. Blake, 2 Hare & J. 350; Cross v. Gardner, 1 Show. 68; Chambers v. Griffith, 1 Esp. 150; Judson v. Wass, 11 Johns. 525; Starkie's Ev. 645.

PLEASANTS, J.   Defendants in error, as partners, filed their petition for a mechanic's lien, setting forth a verbal contract made by them in July, 1875, with Samuel S. Hayes, the owner of the premises, whereby they were to make the necessary excavations, build the foundation and basement walls, lay the brick and set the cut stone in the superstructure, and furnish all the material and do all the work for the lathing and plastering of six dwelling houses in one block on sub-lots described, at prices specified; and also to furnish the material and do the work for the lathing and plastering of two other and separate blocks, of seven and eight houses, respectively, at the same prices fixed for the like in the six first mentioned.   Hayes was to furnish the brick to be used in said six, and receive credit therefor at the rate of five and a-half dollars per thousand, and to make payments, on account, from time to time as the work progressed.   Upon its completion a settlement was to be had, the total cost ascertained, and the balance found due then paid. It was further agreed that petitioners should receive in payment, to the extent of one-third of such total cost, a conveyance from said Hayes of three lots described, with good title and free from incumbrance, at the agreed price of nine thousand dollars, giving back for the excess their note at three years, with interest at nine *per cent. per annum*, secured by a trust deed of the same premises.   The work was to be commenced at once, prosecuted with reasonable diligence, and completed at the latest before the first day of January, 1876.   Answers and replications thereto were filed and proofs taken, from which it appears that petitioners promptly entered upon, and energetically proceeded with the work, and that early in October they applied to Hayes for two thousand dollars on account, but not having the money, he gave them his note at sixty days, and afterwards for convenience of negotiation, substituted four of five hundred dollars each, payable to McGraw, which they transferred to creditors of whom they had purchased materials. These he failed to pay, except the sum of one hundred dollars on one; but he took up the other three with renewal notes in the same form, delivered to the holders, which were finally put into judgments against him—one in the name of the holder, and two in that of McGraw.

In November Hayes opened negotiations with Robert Bayard, of New Jersey, for the loan of a large sum of money upon the security of the premises in question, and on the first day of December, in anticipation of its consummation, executed to George W. Smith three trust deeds of the three blocks of houses aforesaid, respectively, to secure the payment of his notes, as many in number as there were lots conveyed, and each lot as security for a specified note—amounting in the aggregate to the sum of $50,500, payable to his own order at five years, with interest at eight *per centum per annum*, payable semi-annually upon coupons therefor attached. This deed was duly recorded on the third day of December, and with the notes, was afterwards delivered to said Bayard, who thereupon remitted the amount to said Smith to be applied, first, to the extinguishment of existing liens, amounting to some $40,000, and the residue paid over to Hayes. It was all so applied and paid over by the first day of April, 1876.

Meanwhile, the work contracted to be done by the petitioners was completed on the first day of December, and a few days thereafter a settlement was had, by which the total cost was found to be $6,000.00. Petitioners then agreed to take $3,000.00, one half instead of one third as originally agreed, in a credit upon the three lots, and shortly thereafter Hayes and his wife executed their deed of said lots with full covenants of warranty, and they executed their trust deeds of the same premises to David E. K. Stewart, to secure the payment of their note to Hayes for $6,000.00 at three years, with interest at nine per centum per annum. These papers all bore date of December 1, 1875, but the deed to petitioners was not acknowledged until the 10th, nor recorded until the 18th of January, 1876. The trust deed to Stewart was acknowledged on the day last mentioned, and recorded on the 19th, and the note was left with Runyan in escrow, to be delivered to Hayes upon his removing the liens then incumbering the premises. This he then and repeatedly afterwards promised to do in a few days, but failing to fulfil, the petitioners on the 25th of May, 1876, tendered to him a reconveyance of the property by their deed of special warranty, and thereupon on the next day filed this peti-

tion, making parties defendant the said Hayes and his wife, the several tenants of the premises, David E. K. Stewart and George W. Smith, and long afterwards, by amendment, the said Robert Bayard.

On final hearing by the court upon the pleadings and the Master's report of proofs taken, a decree was entered in favor of the petitioners for the full amount claimed, and declaring it the precedent lien. The widow of said Bayard, who is also his executrix and devisee, and George W. Smith, his trustee, bring the record here and assign errors.

And, first, it is insisted that by accepting the deed of the three lots, with full covenants of warranty, petitioners took additional security and thereby waived their lien. But we have seen that by the agreement made before the lien attached, they were to accept it, and that in fact they did accept it, in part payment and not as security, additional or original; and the receiving of part payment in real estate is no more a waiver of the lien for the residue than if it were in money.

Besides, it is manifest from the evidence that the deed was never in fact delivered by Hayes or accepted by the petitioners absolutely. All of the papers of December 1st, relating to these three lots were parts of one entire transaction, and inasmuch as the note, which was the principal, was left in escrow, the delivery of the trust deed to secure it, which was only the incident, was necessarily also conditional. And until the price was absolutely paid or secured, it is to be presumed that the conveyance from Hayes to them was not intended to be absolute. It was put upon record at the suggestion of Hayes, to anticipate the liens of judgments in other suits then pending against him, and upon his promise and doubtless his expectatio to remove the incumbrances within a few days. Since he failed to do so, such delivery and acceptance is not to be regarded as payment or extinguishment of the lien *pro tanto* as between the parties; nor as to Bayard, because his loan preceded it and therefore was not in any degree induced by it.

Appellants further claim that the lien was waived or extinguished as to $2,000.00, by the acceptance and disposition as above stated of the four notes given by Hayes in October. It

is held that the taking of the debtor's note is not necessarily, and without regard to the intention of the parties or the ultimate effect upon the liability of the debtor, a payment of the debt or waiver of the lien: Van Court v. Bushnell, 21 Ill. 627. If such is the intention, or if the actual effect of enforcing the lien after the taking of the note would be to subject the debtor to a double liability, it is a waiver, otherwise not. And the same test would seem to be applicable to the negotiation or other disposition of it. Where the money is due, and the note is taken for the accommodation of the debtor who is then in default, and unable to pay, and with the understanding by the parties that it is to be negotiated, we do not see that the act of negotiating adds any force to the act of taking of it; nor would the further proceeding to judgment thereon by the holder. But in either case the lien creditor, before he can have his decree, must be in control of the note or the judgment—whichever is in force—and offer to surrender or cancel it. Here the proof is not entirely clear that petitioners did so control all of the notes or judgments, and less that they offered to surrender or cancel them. The finding of the court differed from the conclusion of the Master in respect to it, although the report of the latter as a whole, was in general terms approved. Forasmuch as the decree is to be reversed on other grounds, and further proof may be taken on this point, we forbear the expression of an opinion as to its effect as it now stands.

For the same reason we deem it unimportant to pass upon another question of fact raised by appellants, viz: whether the evidence shows two or more contracts for the work upon the several blocks, or only one, as alleged in the petition. The objection for variance, if well founded, may be obviated by amendment, or the question more satisfactorily settled by other testimony.

Nor do we find that the case made is such as to entitle Bayard or his representative to be subrogated to the rights of the creditors whose liens he discharged, since what he did in that regard was voluntary, and not under necessity to protect any existing interest of his own in the property.

But we reverse the decree upon two grounds: First, that

although it finds particular liens upon the several lots and the buildings thereon, respectively, it ascertains the several amounts by applying the credit of over $1,200 for brick furnished by Hayes to be used and in fact used in the six buildings, to the whole claim instead of the claim against those buildings only; and it then orders that in default of payment of the whole amount found due, within the short period of one week prescribed, the Master shall advertise and sell the premises—in separate lots, indeed, but to apply on the aggregate and not on the amount due upon the lots sold respectively—thus subjecting or exposing one lot to sale for what may be due on another.

Since there were at least three separate and distinct blocks of buildings, if not twenty-one separate and distinct buildings, this was error.

It is not a sufficient answer to this objection, if it were true, to say that the contract was an entirety, and that the payments were to be made and credited upon it as a whole, because the lien is not given nor regulated by the contract, but by the statute—which is in derogation of the common law and to be strictly construed. That gives a lien upon lots and the improvements thereon only for work done and materials furnished towards the improvement of the lots, respectively. The materials charged against all was in fact so much less for these six buildings alone as was furnished for them by Hayes; and the fact is not changed by calling it, as for convenience in stating the account the parties may have called it, a payment.

Nor is it an answer to say that the order of sale could do no injury in this case because the ownership of all the different lots was the same—that Hayes and Bayard had the whole interest of ownership and incumbrance, subject to the lien of the petitioners, and therefore it could make no difference to them how the credit was distributed, or for what portions of the whole lien any particular lot should be sold. We cannot know that; and it is enough that the apportionment of this credit and the order of sale were contrary to the statute, as construed by the Supreme Court: Steigleman v. McBride, 17 Ill. 300; James v. Hambleton, 42 Id. 308; Culver v. Elwell, 73 Id. 536.

Second: The more serious error of the decree is that it gives precedence to the lien of the petitioners, which we think was postponed to that of Bayard by their neglect to make him a party to the proceeding for its enforcement within the six months limited by the 28th Section of the Statute.    R. S. 1874, p. 668.

The contract was fully performed on their part, and by its terms their claim became wholly due and payable, on the first day of December, 1875—the trust deeds to Smith were recorded on the third—and the petition was filed against all the other defendants, including Smith, on the 25th day of May, 1876. But Bayard was not made a party until July 9, 1877.

Appellees claim that he was fully represented by Smith, his trustee, and bound by the decree against him.

The deeds showed that Smith had but the naked legal title, with no beneficial interest in the property or in the debt secured by it, and was without power to act in the premises except upon a contingency which at the time of filing this petition had not happened, *to wit:* the default of Hayes; and then, merely to sell and pay over the proceeds to his *cestui que trust,* the party really interested.   Such a trustee is certainly not the " creditor " intended by the section of the statute above referred to.    And it seems to be settled that he is not his representative in such a sense as that a decree against him, affecting the property, will bind the *cestui que trust.*

Thus in Lomax et al. v. Dore et al. 45 Ill. 379, one Brown had purchased the premises in question of Lomax, and given a trust deed to Marye to secure the purchase money.   He afterwards contracted with the defendants in error to improve them. In default of payment the trustee sold under the power contained in his deed, and Lomax became the purchaser, and went into possession.   Defendants in error filed their petition against Brown for a mechanic's lien, obtained a decree, and purchased the premises at the sale thereunder.   They then brought this bill to determine their rights, and on demurrer to it the Supreme Court held, that to the proceeding to enforce the mechanic's lien, both the trustee and the *cestui que trust* should have been made parties, and that the demurrer reached this objection.

Again, in Scanlan et al. v. Cobb, guardian, &c. 9 Legal News, 340, Cobb's ward had conveyed to Scanlan, who borrowed $4,000 of one Goodman upon the security of the property, and to secure its payment conveyed to Lyman, in trust, to sell on default, &c. Cobb brought this bill to set aside his ward's deed on the ground of her insanity at the time of its execution, against Scanlon her grantee, and Lyman the trustee, but did not make Goodman a party. The Supreme Court say that "Lyman had but the naked legal title, with the duty to sell on default of payment of the amount secured by his deed when due, but the substantial equitable interest was in Goodman," and citing with approval Story's Eq. Pl. § 207, for the rule as to parties in such cases, hold that "Goodman was clearly a necessary party, and it was error to deprive him of his security without giving him an opportunity to be heard." See, also, Story's Eq. Pl. §§ 201, 207; and 1 Daniel's Ch. Pl. & Pr. (4th Ed. by Perkins,) 256; and the opinion of Mr. Justice CURTIS, in Hall v. Sullivan Railway, in 2 Redfield on the Law of Railway's, pp. 465-471 (note).

The only case cited by counsel for appellees on this point, is that of Willis v. Henderson, 4 Scam. 13. That was a bill to foreclose a mortgage. The mortgagor subsequently conveyed his equity of redemption to a third party, with notice of the mortgage; and he afterwards voluntarily to a fourth, in trust for the benefit of his creditors generally. It was sought to reverse the decree of foreclosure, because these creditors were not made parties, but the Supreme Court held it unnecessary. There the trust was clearly an active one. And further, we have never supposed that a decree of foreclosure was erroneous because subsequent purchasers or incumbrancers were not made parties to the bill, but that in such case their rights were simply unaffected by it and they might still redeem.

It was also urged that Bayard was not named in the deeds to Smith as *cestui que trust;* that the record disclosed no interest in him, and that petitioners were not bound to discover and proceed against the holder of a secret lien. But the lien was not a secret one. It was evidenced by deeds duly recorded before petitioners settled with Hayes,

which, therefore, were constructive notice; and actual notice is also shown by the fact that they made the trustee a party in the first instance: The *cestui que trust* was declared to be the holder of the notes described in the deed, whoever he might be. If he had been named he might at any time have transferred them to another; and so of every case in which the interest depends upon the ownership of a negotiable note. But this will not excuse the neglect to use some effort to ascertain the party and bring him before the court. Here the amount of the loan and the tenor of the notes indicated that the holder held them as an investment. His name could easily have been ascertained by inquiry of Smith or Hayes, and following it up if found necessary. And we know of no reason why petitioners might not have availed themselves of the provisions of the Chancery Act, in reference to unknown parties. The 9th Section of the Lien Act makes those provisions applicable to proceedings under it.

We hold, then, that they could not acquire priority over his lien without making him a party, known or unknown, within six months from the time when their claims became due and payable, and having failed to do so, his representative may claim the benefit of the bar: Dumphy v. Riddle, Chicago Legal Jour. Vol. 1, No. 5, p. 230; Crowl v. Neagle, Id. No. 9, p. 377.

For the errors above indicated, the decree of the Circuit Court is reversed and the cause remanded.

Judgment reversed.