## Edwin J. Bradford v. The Neill & Mahnke Construction Co. et al.

1. ACCEPTANCES—*Rights of the Acceptor.*—An acceptor of a draft either satisfies himself out of the funds of the drawer which he has in his possession, or he may recover of the drawer the amount which he pays on it; but in no case can he bring an action against the drawer or charge the amount of the bill in the account of the drawer before he actually pays it, and thus discharges the drawer from all responsibility.

2. MECHANICS' LIENS—*Not Defeated by the Receipt of Acceptances.*—A contractor in the course of the construction of a building drew several drafts upon the owners of the premises in favor of and delivered them to a company furnishing material, and which were accepted by such owners but nothing was paid upon them. In the absence of an agreement to receive the acceptances as payments it was held that they could not be

Bradford v. Neill & Mahnke Construction Co.

considered as such to defeat the right of the contractor to a mechanic's lien.

3. BILLS OF EXCHANGE—*When Dishonored—Rights of Creditors.*—A debtor breaks his contract to pay, when his bill or note is dishonored; and if the creditor, who has parted with value, sues for the original consideration, the authorities predominate in favor of allowing him to recover.

4. PROMISSORY NOTES—*When Taken as Payments.*—The mere giving of a note or other negotiable security, unless specially agreed to be received as payment, is treated, *prima facie,* as a conditional payment only.

5. SAME—*Recovery on the Original Consideration.*—The court cites authorities in support of the proposition that if a note or bill is lost, or can not be produced on the trial for cancellation, a recovery may be had on the original consideration.

6. SAME—*Expression "Prima Facie Payment" Explained.*—The expression found in the text books and some of the decisions, that the giving of a note is *prima facie* conditional payment, only tends to confuse the subject. It can only mean that when the holder is paid the amount evidenced by the note, then and then only, the debt is paid.

**Mechanic's Lien.**—Trial in the Circuit Court of Cook County; the Hon. ELBRIDGE HANECY, Judge, presiding. Hearing. Bill dismissed. Appeal by complainant. Heard in this court at the October term, 1897. Reversed and remanded with directions. Opinion filed June 13, 1898.

LINDEN & DEMPSEY, attorneys for appellant.

By the acceptance of an order from the contractor to the owner, requesting him to pay the amount due to a third person, the mechanic's lien for that amount is not obliterated or destroyed, but the holder of the order becomes entitled to the avails of the lien to the extent of the amount of the order, and equity will enforce the lien for his use and benefit. The contractor remains the legal owner of the lien, and suit to enforce it is properly brought in his name. Major v. Collins, 11 Ill. App. 658; Phœnix Ins. Co. v. Batchen, 6 Ill. App. 621; Cairo & V. R. Ry. Co. v. Fackney, 78 Ill. 116; Standard Oil Co. v. Sowden, 45 N. E. Rep. 320; Weber v. Bushnell, 69 Ill. App. 25; Bayard v. McGraw, 1 Ill. App. 141; Friedman v. Roderick, 20 Ill. App. 622; Phillips on Mechanics' Liens, Sec. 278; 2 Jones on Liens, Secs. 1494-5-8.

It is not material, so far as the defendant is concerned, that an action is not expressly brought for the use of the

beneficiary. Standard Oil Co. v. Sowden, 45 N. E. Rep. 320; Weber v. Bushnell, 69 Ill. App. 25; Union National Bank v. Post, 64 Ill. App. 404; Hobson v. McCambridge, 130 Ill. 367.

The delivery and acceptance of an order for a sum of money does not operate to extinguish the original indebtedness, but at most merely suspends the right of action thereon until the failure of the acceptor to pay the bill. Refusal to pay revives the original right of action. Tiedeman on Negotiable Instruments, 209; 1 Daniel on Negotiable Instruments, 395; 2 Id. 264.

The drawing of a draft by a lienholder for the lien debt, the acceptance of it by the debtor and a transfer of the draft to a third person, do not constitute an assignment of the lien to such third party. 2 Jones on Liens, Sec. 1494; First National Bank v. Day, 64 Ia. 118.

JESSE A. & HENRY R. BALDWIN, attorneys for appellees, contended that an order or bill of exchange, when accepted by the drawee, operates as an assignment *pro tanto* to the account of the payee of the funds of the drawer in the drawee's hands, citing Moore v. Gravelot, 3 Ill. App. 442; Wood's Byles' Bills and Notes, Sec. 34; Tiedeman on Commercial Paper, Sec. 5 B; 1 Parsons' Bills and Notes, 331; 1 Daniel on Negotiable Instruments, Sec. 18; Norton on Bills and Notes, Sec. 69; Union National Bank v. Oceania County Bank, 80 Ill. 212; Bank of America v. Indiana Banking Co., 114 Ill. 483; Bank of Antigo v. Union Trust Co., 149 Ill. 343; Abt v. American Trust & Savings Bank, 159 Ill. 467, and cases cited.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

The appellant, Edwin J. Bradford, filed a petition for a mechanic's lien, making the Neill & Mahnke Construction Company, Minnie Mahnke, Euphemia Neill and others defendants. After the issues were made up the cause was referred to a master to take proofs and report the same to

the court with his opinion on the law and evidence. The master reported in favor of the appellant, and that there was due him $474.94, and that the same was a lien on the premises described in the petition, and recommended a decree accordingly. The court sustained exceptions made by appellees to the report and dismissed the bill.

The appellees Minnie Mahnke and Euphemia Neill were the owners of lots 41 and 42 in Averill's subdivision of the S. E. ¼ of Sec. 3, township 38 north, range 14 east of the third principal meridian, in Cook county, Illinois. June 4, 1895, the Neill & Mahnke Construction Company and Johnstone Gregory, appellees, acting for and being authorized thereto by Euphemia Neill and Minnie Mahnke, contracted in writing with appellant to furnish all the labor and material necessary for the completion of plumbing, sewering and gasfitting in two three-story and basement flat buildings then being erected in the above described premises. By the terms of the contract the work was to be completed August 1, 1895, or as soon thereafter as the progress of other contractors would allow. The contract price of the work was $1,080, and appellant did extra work of the value of $56. The work was substantially completed about October 9, 1893. It appears that appellant was delayed in his work by other contractors. The total amount of payments made to appellant on the contract, excluding from consideration certain acceptances hereinafter mentioned, was $610, leaving due him, after the allowance of certain credits to which the owners were entitled, a balance of $474.94.

It is conceded that appellant filed in December, 1895, within the time limited by the statute, a sufficient statement of his claim, on the hypothesis that there was any amount due him at that time. While the work was being performed by appellant he drew three orders or drafts on the Neill & Mahnke Construction Company in favor of the Sanitary Specialty Manufacturing Company, the latter company having furnished appellant with material to be used in the performance of his contract. The orders

were of the following dates and for the following amounts: August 19, 1895, $200; September 4, 1895, $65; September 20, 1895, $260.52. The first order was accepted by the Neill & Mahnke Construction Company August 22, 1895, "payable out of next draw." The second order was indorsed by said company, "accepted as above," and the third was accepted by the company, less $17.25, making the total of acceptances $508.27. The orders with the acceptances were delivered by appellant to the Sanitary Specialty Manufacturing Company, a firm composed of Robert Sproul, William T. McGurrin and Herman Verbeek, and nothing has ever been paid on any of the orders. On the hearing before the master these orders were produced and counsel for appellant offered to hold them subject to the order of the court, to be canceled in the event of a sale of the premises by decree of the court. It also appears from a petition in the record of Herman Verbeek and others, the payees in the orders, which petition the court refuse permission to file, that Verbeek was present at the taking of the proofs before the master, and consented to the surrender and cancellation of the acceptances, and in and by his petition so consented, and further offered to dismiss a suit at law which theretofore, and prior to the commencement of the present suit, he had brought on the acceptances against the Neill & Mahnke Construction Company.

The contention of the appellees is that, after the acceptances were delivered to the Sanitary Specialty Manufacturing Company, appellant ceased to have any claim for any balance due under his contract, such balance being wholly included in the acceptances, and that, thereafter, he could not legally file any statement or claim of lien. This, necessarily, involves the premise that the acceptances were equivalent, in law, to a payment to appellant of the balance due him. If the acceptances so operated, then the acceptor might legally have charged appellant, the drawer, with the amount of the acceptances. But such is not the law.

" The acceptor either satisfies himself out of funds of the

drawer which he has in his possession, or he may recover of the drawer the amount which he *pays* on the bill.    But in no case can he bring an action against the drawer, or charge the amount of the bill in the account of the drawer *before he actually paid the bill*, and thus discharge the drawer from all responsibility." Tiedeman on Comm. Paper, Sec. 209, citing Braxton v. Willing et al., 4 Call. (Va.) 288, and Planters Bank et al. v. Douglas et al., 2 Head. (39 Tenn.) 699, which fully support the text.

See also Story's Bills of Exchange, 4th Ed., Sec. 420, and 2 Randolph on Comm. Paper, Sec. 628, to the same effect. The non-payment of the orders left appellant still liable and responsible to the Sanitary Specialty Manufacturing Company.

" The debtor has broken his contract to pay when his bill or note is dishonored, and if the creditor, who has parted with value, sues for the original consideration, the authorities predominate in favor of allowing him to recover." 2 Daniel on Neg. Insts., 2d Ed., Sec. 1261, citing a large number of cases.

In McConnell et al. v. Stettinius et al., 2 Gilm. 707, the action was assumpsit; one of the defendants was defaulted and the other pleaded that the amount sued for had been settled by the execution by one of the defendants to the plaintiffs of a negotiable promissory note, and that the plaintiffs had assigned the note to one Homans, without recourse, etc.    The plaintiffs replied that at the commencement of the suit they had the note in their possession, etc. The court held the replication good, saying: " It is well settled that the mere giving a negotiable note, or its indorsement to a third person, does not extinguish the original cause of action if the payee can show that the note has been lost or can produce it on the trial to be canceled."

The following authorities support the proposition that if the note or bill is lost, or can be produced on the trial for cancellation, a recovery may be had on the original consideration.    Miller v. Lumsden, 16 Ill. 161; Stevens v. Bradley, 22 Ib. 244; Heartt v. Rhodes, 66 Ib. 351.

The merely giving a note or other negotiable security, unless specially agreed to be received as payment, is treated *prima facie* as conditional payment only. Rayburn et al. v. Day, 27 Ill. 46; Heartt v. Rhodes, *supra;* Bailey et al. v. Pardridge et al., 134 Ib. 188; Van Court v. Bushnell, 21 Ib. 626; Paddock et al. v. Stout et al., 121 Ib. 571.

Held, in the last two cases, that the taking of a note did not discharge the lien.

The expression found. in the text books and some of the decisions, that the giving a note is *prima facie* conditional payment only, tends to confuse the subject. It can only mean that when the holder of the note is paid the amount evidenced by it, then and then only is the debt paid, necessarily implying that the mere giving of the note is not, in and of itself, payment, and what is thus necessarily implied may be expressed more plainly in fewer words.

In Bayard et al. v. McGraw et al., 1 Ill. App. 134, it appeared that the petitioners for a mechanic's lien had received from the owner, on account of money due them on their contract with him, four promissory notes which they had negotiated. The owner having failed to pay the notes, took up three of them by renewal notes to the holder, and judgments were recovered on two of the renewal notes in the name of the contractor, and on one of them in the name of the holder. It was claimed that the lien was waived or extinguished as to the amount evidenced by the notes. But the court held not, saying : " When the money is due and the note is taken for the accommodation of the debtor who is then in default and unable to pay, and with the understanding by the parties that it is to be negotiated, we do not see that the act of negotiating adds any force to the act of taking it; nor would the further proceeding to judgment thereon by the holder. But in either case the lien creditor, before he can have his decree, must be in control of the note or judgment, whichever is in force, and offer to surrender or cancel it."

The last case is cited with approval in Chisholm v. Randolph, 21 Ill. App. 312. Counsel for appellees contend that

the acceptances were received by appellant as payment. Whether they were so accepted or not, depends upon what was the understanding and intention of the parties. The following occurred in the examination in chief of appellant:

Q. "Was any conversation had at any time about these orders that have been offered in evidence directed to the Sanitary Specialty Manufacturing Company?" A. "Yes, sir. They said they would accept orders for material if I would give orders, and pay the material bills, which was just as satisfactory to me as the cash," etc.

It is very clear that this does not show any agreement to receive the acceptance as payment. The last part of the witness' answer, viz., "which was just as satisfactory to me as the cash," does not purport to be a statement made by him to the drawee of the orders, but merely a statement thrown out by him at the hearing. Of course, if the acceptor had done as he says in his answer it promised, viz., not only accept orders for material, but pay the material bills, it would have been as satisfactory to appellant as cash. It would have been the equivalent of cash had the Neill & Mahnke Construction Company paid bills for material which appellant owed.

On cross-examination of appellant the following occurred:

Q. "These different orders which you gave for materials and for labor, and which Mr. Neill said would be accepted, you have stated that you said to him that that would be just as satisfactory to you as payment to you in cash, is that right?" A. "Yes, sir."

The question was well calculated to mislead, and, as his subsequent examination shows, did mislead the witness. He had not testified that he told Neill or any one else, that the acceptances would be as satisfactory to him as cash, and on his redirect examination he testified that the answer last above quoted is incorrect. He says: "It is incorrect in the fact that the mere acceptance of the orders would not be the payment of cash, and my having them accepted. The agreement was to accept them and pay the Sanitary people the money called for in the orders. I wanted it understood that the orders would be paid."

We think the evidence falls far short of showing an agreement to receive the acceptances as payment. Much of the argument of appellant's counsel is devoted to discussing the claims of Sproul and others, composing the Sanitary Specialty Manufacturing Company, who furnished material to appellant, and in whose favor the orders in question were drawn, and the refusal of the court to allow the filing of their petition for leave to intervene is assigned as error. Sproul and his partners have not, nor has any of them, appealed, nor assigned cross-errors, neither have they entered an appearance in person or by attorney, and we fail to perceive how the refusal of the court to permit them to file a petition can in the least affect appellant's rights in the premises.

The master recommended as follows: "I therefore recommend, if the complainant shall produce and surrender the orders in question, to be canceled upon the satisfaction of a decree herein for the amount so found to be due, that a decree be entered herein establishing a lien upon the premises in question for said sum of $474.94, according to the prayer of the bill of complaint, and directing the payment to complainant of said sum within a time to be fixed by said decree, and that in default thereof, the said land, buildings and premises, or so much thereof as shall be necessary for the satisfaction of such decree, be ordered and decreed to be sold under and in accordance with the provisions and requirements of the statutes in such case made and provided." The decree will be reversed and remanded, with directions to enter a decree as recommended by the master. Reversed and remanded, with directions.