THEODORE FREYDENDALL *et al.*

*v.*

LYMAN BALDWIN *et al.*

*Filed at Ottawa June 21, 1882.*

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—*what property passes thereby.* A voluntary assignment, made by a failing debtor for the benefit of his creditors, if valid, passes all the property, real and personal, which the debtor at the time owned.

2. SAME—*jurisdiction of county court—creditor's bill—whether it will be entertained in chancery.* In case of such assignment, the county court, by the statute, is invested with complete and full jurisdiction over the trust fund and the assignee, until the property is disposed of and the proceeds distributed to those entitled to share therein, and a court of equity, on creditor's bill, where the assignment is not questioned or impeached, will not assume jurisdiction to manage and direct the application of such fund by the assignee, unless under special circumstances, but will leave that to the county court.

3. Where a debtor has made a valid general assignment, under the statute, of all his property and effects, for the benefit of creditors, a creditor having a judgment can not maintain a bill in equity to have prior judgments against his debtor set aside on the ground they are void or fraudulent. His remedy in such a case is before the county court, which has the power to determine what creditors are entitled to share in the proceeds of the debtor's effects, and the priority of the equitable liens of the several creditors.

4. Whether judgments confessed by the insolvent debtor are void for any reason, or whether executions issued on such judgments were satisfied by a technical levy on personal property and its release, or whether such judgment creditors are entitled to priority over the other creditors by reason of their execution liens at the time of the assignment, are questions within the jurisdiction of the county court, to be decided by it in its supervision and direction of the settlement and distribution of the trust funds in the hands of the assignee.

5. The whole management of the estates of insolvent debtors, under voluntary assignments, is by law committed to the jurisdiction of county courts. How the funds in the hands of the assignee are to be paid over and distributed, are matters for the determination of the county court where the proceedings are pending, and its judgments and orders in that respect can only be reviewed on appeal or error.

6. CHANCERY—*waiver of relief sought in bill.* Where a creditor's bill asked that a voluntary assignment of a debtor, for the benefit of creditors, be

set aside as fraudulent, but the matter was not pressed in the court in which the cause was first heard, nor in the Appellate or this court, counsel stating in this court that his position is not hostile to the assignment: *Held*, that the part of the bill seeking to have the assignment set aside must be treated as having been waived.

7. JUDGMENT—*when a stranger may attack it.* A judgment or decree absolutely void for want of jurisdiction in the court, may be assailed by a stranger to the record, if it affects his prior or superior equities. Otherwise he can not intermeddle with it.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the City Court of Aurora; the Hon. C. D. SMITH, Judge, presiding.

Mr. CHARLES WHEATON, and Messrs. NICHOLS & CLAPSADDLE, for the appellants.

Mr. A. J. HOPKINS, and Mr. N. J. ALDRICH, for the appellee the Second National Bank of Aurora.

Mr. R. G. MONTONY, for the appellees Rebecca M. Baldwin, Nellie E. Higgins, and Susan S. Jenks.

Mr. EUGENE CANFIELD, for the appellee William F. Dickinson.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

The bill in this case was brought by a number of the judgment creditors of William Lawrence & Co., and the object was to set aside as fraudulent a voluntary assignment made by that firm, under the provisions of the statute, to William F. Dickinson, on the 25th day of January, 1879. Incidentally to the principal relief, it was sought to set aside a judgment in favor of the Second National Bank of Aurora, also one in favor of Rebecca M. Baldwin, one in favor of Nellie E. Higgins, and one in favor of Susan S. Jenks, because such judgments were alleged to be fraudulent as to complainants. It is also alleged a number of conveyances of real estate

made by the judgment debtors to parties named, were fraudulent as to complainants, and should be set aside, and the property subjected to the payment of their respective judgments.

It appears the judgments in favor of the bank and other defendants were all obtained prior to the assignment, and it is charged in the bill that executions issued on such judgments were levied on a stock of merchandise owned by the judgment debtors before the assignment, or at least before the assignee got possession of the goods, and that when the assignee went to take possession of the property, a deputy sheriff had made, or was about to make, a levy on the goods under the executions in his hands. An arrangement was then made between the assignee and the sheriff, with the written consent of all the execution creditors interested in the executions in his hands, if the county court would permit the same to be done, to allow the assignee to take possession of and sell the goods at private sale, and pay the proceeds realized to the deputy sheriff, until the executions in his hands should be satisfied. A petition was accordingly presented to the county court for the leave desired, which was granted. It was under that arrangement the assignee took possession and proceeded to sell the goods, and from time to time paid over to the sheriff or his deputy the proceeds, which, it is alleged, amounted to a large sum of money. The prayer of the bill is, that the assignment to Dickinson be set aside as fraudulent and void as to complainants, and that a receiver be appointed, and that the execution creditors—the sheriff having the executions in his hands—and the assignee, all be required to account to such receiver for any money or property in their hands that may have come to them under the assignment, or otherwise, belonging to the judgment debtors, to be appropriated in satisfaction of the judgments in favor of the several complainants. On the hearing the court set aside the judgments in favor of Mrs. Baldwin, Mrs.

Higgins and Mrs. Jenks as fraudulent and void as to complainants, and dismissed the original bill so far as it asked other relief. On appeal to the Appellate Court for the Second District, that decree, in so far as it set aside the several judgments mentioned, was reversed, and that part of the bill which asked relief as to them was dismissed, but in all other respects the decree of the circuit court was affirmed, and now the original complainants bring the case to this court.

The bill in this case is in the strictest sense a creditor's bill. It seeks a discovery of assets alleged to be in the hands of persons made defendants, and that the same may be paid to a receiver to be appointed by the court, and to be ultimately appropriated to the payment of complainants' judgments against the debtor firm. Specific relief is sought concerning certain matters: First, that the assignment made by the judgment debtors on the 27th day of January, 1879, to William F. Dickinson, be set aside as fraudulent as to complainants; and second, that the judgments in favor of the Second National Bank, and in favor of Mrs. Baldwin, Mrs. Higgins and Mrs. Jenks, be all set aside as null and void, because such judgments were all confessed on notes ante-dated, and that the same were not in fact due at the time such judgments were confessed by the attorney in fact of the makers, or that such judgments shall be decreed to be satisfied, because the executions issued thereon were levied by the sheriff on personal property of the execution debtors of sufficient value to satisfy them, and which property was afterwards, with the consent of the execution creditors, surrendered to the assignee of the judgment debtors.

It is a proposition that needs nothing in its support, if the voluntary assignment made by the failing debtors was valid, all the property, real and personal, which they owned at the time passed to their assignee, under the provisions of the statute. Unless, therefore, the assignment could be set aside for some valid reason, it is not perceived what standing com-

plainants can have in a court of equity. A creditor's bill
proceeds on the ground complainant therein has a judgment
at law that is a lien upon the property of the debtor, no
matter in whose hands it may be, and the aid of a court of
chancery is invoked to assist in subjecting it to the payment
of his judgment. While it is true in this case the bill asks
that the assignment be set aside, the matter was not pressed
on the attention of the court in which the cause was first
heard, nor was it in the Appellate Court, or in this court.
Counsel now states his position is not hostile to the assign-
ment. That being so, that part of the bill that asks to
have the assignment set aside may be held as having been
waived. No reason is or has been suggested why the assign-
ment is void. It seems to have been made in conformity with
the statute, and no cause is shown why it may not stand.

Treating the assignment, as must be done, as valid in law,
it is difficult to comprehend on what principle complainants
can demand of a court of equity the incidental relief sought
by their bill. Certainly they can not demand that the judg-
ments at law in favor of defendants against the common
debtors shall be set aside, unless they are in some way inju-
riously affected by them, and then only to the extent such
judgments interfere with their prior or superior equities.
Whether such judgments are absolutely void for want of
jurisdiction in the court to render them, is a matter in which
complainants have no concern. That question can only be
made by a party to the record. A judgment or decree abso-
lutely void for want of jurisdiction in the court, if it affects
his prior or superior equities, may be assailed by a stranger
to the record. Otherwise he may not intermeddle with it.

All the property the insolvent debtors had at the time of
the assignment passed to and vested in the assignee under the
statute, and must be administered by him under the super-
vision of the county court. Section 7, of the act of 1877,
in relation to voluntary assignments, makes the assignee

subject to the supervision of the county court, and such court may, by citation or attachment, compel the assignee to file reports of his proceedings, and of the situation and condition of the trust, and to proceed in the faithful execution of the duties required of him by law in relation to the complete and final distribution and paying over of the proceeds derived from the trust, or any part thereof, until a final settlement and distribution are made.  Thus it is seen the whole management of the estates of insolvent debtors, under voluntary assignments, is committed to the jurisdiction of county courts, and by section 14, full authority and jurisdiction are given to such courts in regard to such matters.  How the trust funds in the hands of the assignee are to be paid over and distributed, are matters for the determination of the county court where such proceedings are pending, and its judgments and orders in that respect can only be reviewed as the judgments and decrees of other courts of competent and original jurisdiction are reviewable by appellate courts. It was entirely competent for the General Assembly to confer such jurisdiction on county courts, and their jurisdiction in such matters is too manifest to be disputed.  Certainly a court of chancery will not assume jurisdiction on a bill to interfere and direct how the county court shall distribute a trust fund over which it has full and complete jurisdiction by positive statute, unless under special circumstances. Although this bill is not framed with a view to obtain any such relief, counsel now say in argument they "do not repudiate the assignment," but "claim under it," and are seeking to enforce their "equitable liens under it."  That a court of chancery will not aid them to do, when another court under the statute has full and complete jurisdiction over the subject.  The power of a court of chancery to so interpose and wrest from the county court that jurisdiction it has by law in such matters, is not referable to any known head of equity jurisdiction.  And since the county court has first obtained

jurisdiction, and may be presumed to be exercising it according to law, to that court complainants will be remitted for any relief, if any, to which they may be entitled.

Whether the judgments confessed in favor of defendants were void for any reason, or whether the executions issued on them were satisfied by a technical levy on personal property, when in fact they were not satisfied, or whether defendants are entitled to any priority over other creditors, by reason of their execution liens, in the distribution of the trust funds, are questions within the jurisdiction of the county court, and to be determined by it as it shall proceed in the supervision and direction of the settlement and distribution of the trust funds in the hands of the assignee. These questions must necessarily arise, if they have not already been determined, in that court, when it comes to make the necessary orders for paying over and distributing the trust funds preparatory to final settlement. Should this court now express an opinion upon them, it would answer no purpose other than to advise the county court of its opinion should the same questions be raised in that court, if they ever shall be. That would be a work of supererogation. It will be presumed the county court is entirely competent to determine all questions that may arise within its jurisdiction concerning the trust property which the law has placed under its immediate supervision.

The judgment of the Appellate Court is clearly right, and must be affirmed, which is done.

*Judgment affirmed.*


Mr. JUSTICE WALKER: I deny the power of the court of chancery to take jurisdiction in any case pending in the probate court, of which it has complete jurisdiction. It is, I think, unprecedented, and therefore dissent to so much of this opinion as seems to hold it may be done under special or any circumstances.