SETH F. HANCHETT

v.

D. U. WATERBURY.

*Filed at Ottawa March 24, 1885—Rehearing denied March Term, 1886.*

1. ASSIGNMENT FOR THE BENEFIT OF CREDITORS — *equality among creditors.* By the statute on the subject, all voluntary assignments for the benefit of creditors are placed on the same footing, and all preferences among creditors not having liens on the property assigned, are made void, and the effects of the assignor must in all cases be distributed *pro rata* among the creditors by the county court, as directed in such act.

2. SAME—*jurisdiction of county court.* Under the several provisions of the act of May 22, 1877, entitled "An act concerning voluntary assignments, and conferring jurisdiction therein upon county courts," a new and special jurisdiction is conferred upon county courts over the subject matter of such assignments, the exercise of which can not be interfered with or embarrassed by process from other courts. Such jurisdiction attaches by the making, filing and recording of the assignment in the mode prescribed in the act.

3. Under that act the county court, when exercising the powers therein conferred, is in effect an insolvency court, and the same general principles applicable to such courts must be applied.

4. SAME—*remedy of adverse claimant—trial of right of property.* After the county court has once acquired jurisdiction of the estate of an assigning debtor, he and the assignee, and all other persons having an interest in or upon the estate, are subject alike to the judgment of that court; and a claimant of any property assigned for the benefit of creditors will not be allowed to take the same from the assignee by writ of replevin from another court, but he may present his claims to the county court, which is authorized to call a jury to try the right of property.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Messrs. HORTON, HOYNE & SAUNDERS, for the appellant:

The assignee does not take his title and powers from the court like a receiver, or under the statute. The statute simply regulates the mode of distribution, and other details in the management of the trust. He is not a purchaser for value,

but a mere volunteer, and takes only such right, title and interest as the assignor had.  *O'Hara* v. *Jones*, 46 Ill. 293; *Eames* v. *Mayo*, 6 Bradw. 338.

Attachment, replevin, etc., are proper actions by and against an assignee, and under them the validity of an assignment may be tested.  *Savery* v. *Spaulding*, 8 Iowa, 239; *Price* v. *Parker*, 11 id. 144; *Drain* v. *Mickel*, 8 id. 438; *Moss* v. *Humphrey*, 4 Greene, (Iowa,) 443; Wells on Replevin, sec. 325.

There is no question but that replevin would lie against a voluntary assignee prior to the act of 1877.  That is one mode recognized as a valid and proper mode of testing the validity of the assignment.  The validity of the assignment might be tested by the levy of an execution, by attachment, or by a bill in chancery.  *Armsdell* v. *Sigerson*, 2 Gilm. 83; *Conkling* v. *Carson*, 11 Ill. 503; *Finley* v. *Thompson*, 29 id. 9.

An assignee under a voluntary assignment for the benefit of creditors does not represent the creditors, but is the exclusive representative of the assignor.  *Hawks* v. *Pritzloff*, 51 Wis. 162; *Esterbrook* v. *Mississimitt*, 18 id. 551; *Heinricks* v. *Woods*, 7 Mo. App. 236; *Morris' Appeal*, 88 Pa. St. 382.

Messrs. G. W. & J. T. KRETZINGER, for the appellee:

The sole right of a failing debtor to assign his property for the benefit of his creditors exists under and by virtue of the statute, entitled "An act concerning voluntary assignments, and conferring jurisdiction therein upon county courts," approved May 22, 1877, in force July 1, 1877.  The right the debtor may have had to make an assignment for this purpose at common law, is taken away by this statute.  Rev. Stat. chap. 10; *Freydendall* v. *Baldwin*, 103 Ill. 329.

This statute confers exclusive jurisdiction upon county courts to hear and determine the rights of all parties as creditors or claimants of the estate.  *Globe Ins. Co.* v. *Cleveland Ins. Co.* 14 N. B. R. 328; *In re Vogel*, 7 Blatchf. 18.

Sections 7 and 14 of the act confer exclusive jurisdiction upon county courts to take charge of the judicial administration of the estate, and exclusive jurisdiction over the *res* and the assignee. This jurisdiction having thus attached, the jurisdiction of no other court can attach at the suit of any one in any form of action. *Grignon's Lessee* v. *Astor,* 2 How. 338; *Freydendall* v. *Baldwin,* 103 Ill. 329; *Purviance* v. *Glenn's Exrs.* 3 Md. 256; *Carter* v. *Dennison,* 7 Gill, 157; *Jamison* v. *Chestnut,* 8 Md. 34.

The judicial administration of the estate can not be interrupted by a suit in replevin, or by any other writ or process from any other court. *In re Vogel,* 7 Blatchf. 18; *Peck* v. *Jennes,* 7 How. 612; *Buck* v. *Colbaith,* 3 Wall. 334; *In re Cook & Gleason,* 3 Biss. 119.

Even in cases where no exclusive jurisdiction has been conferred upon some special forum, and thus several courts have concurrent jurisdiction over the same subject matter and parties, the rule is universal that the jurisdiction first invoked attaches *eo instanti* to the *res* and the parties, thereby suspending the jurisdiction of every other court. See cases last above cited, and *Taylor* v. *Carryl,* 20 How. 593.

A compliance with this insolvent law,—that is, executing the deed of assignment, recording the same and filing it with the clerk of the county court,—puts this special and exclusive jurisdiction of the county court in motion. *In re Vogel,* 7 Blatchf. 18; *Peale* v. *Phipps,* 14 How. 368; *Freydendall* v. *Baldwin,* 103 Ill. 329.

The instant this jurisdiction attaches, the property and estate of the debtors—the assignors—are within the custody of the law, and are thus placed beyond the jurisdiction of every other court, and this jurisdiction may be protected, if sought to be invaded by injunction or proceedings in contempt. *Knott* v. *The People,* 83 Ill. 532; *Yott* v. *The People,* 91 id. 11; *Hogan* v. *Lucas,* 10 Peters, 404; 1 Show. 174; *Funk & Hardman* v. *Israel,* 4 Iowa, 450; *Buck* v. *Colbaith,*

*3* Wall. 340; *Freeman* v. *Howe,* 24 How. 450; *Mitchell* v. *G. W. M. and M. Co.* 2 Story, 657.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

In December, 1883, Ingram, Kitchen & Williams made a voluntary assignment to D. M. Waterbury, the appellee, for the benefit of creditors. Vietor & Achelis, claiming to be the owners of certain articles of property embraced in the assignment, and then in the possession of Waterbury, as assignee, sued out of the circuit court of Cook county a writ of replevin for the recovery thereof, and placed it in the hands of Seth F. Hanchett, as sheriff, for execution. The county court, on the petition of the assignee, thereupon entered an *ex parte* order enjoining and restraining the sheriff from executing the writ of replevin. On the same day the sheriff appeared in the county court and filed a written motion to set aside the restraining order, which the court, upon due consideration, declined to do, and thereupon entered a formal order overruling said motion. From this last order the sheriff prosecuted an appeal to the circuit court, where the same was reversed, and the original restraining order set aside. On appeal to the Appellate Court for the First District the order of reversal in the circuit court was in turn reversed and set aside by the Appellate Court, and the case is now before us on appeal from the latter court.

No question is made as to the validity of the deed of assignment, or the regularity of any of the proceedings under it, prior to the filing of the petition and entry of the restraining order complained of. We are therefore warranted in assuming there has been, on the part of all concerned, a substantial compliance with the provisions of the statute relating to such assignments.

From this statement of the facts it is manifest the main question presented for determination is, whether the county court had power to make the restraining order complained

of, for, assuming the power of the court to exist, the propriety
of exercising. it will not be, and, indeed, is not, questioned.
Whether the court had such power or not, depends upon the
construction which must be given to the act of May 22, 1877,
entitled "An act concerning voluntary assignments, and con-
ferring jurisdiction therein upon county courts." The posi-
tion of appellant is, that the power to make an assignment
for the benefit of creditors is not conferred by the act in ques-
tion; that the right was an existing one prior to its adoption,
and is not in any way affected by it; that "the title, power
and authority of the assignor are full and complete, inde-
pendent of the county court and of the statute." This view
we regard as far from being accurate. It is true that the
right and power of a failing debtor to pass the title of his
effects to an assignee remain as they did before the statute,
but this is all. The power to control the distribution and
beneficial enjoyment of his property upon such a transfer of
the title is essentially different from what it was before the
statute. Prior to its adoption the insolvent debtor could dis-
tribute his property among his creditors just as he pleased.
If there was not sufficient to pay all, he might direct the
whole of one's claim be paid and only half of another's, or he
might prefer the claim of a single creditor to the exclusion of
all the others, and the assignee would be bound to carry out
his directions. Then the county court had nothing whatever
to do with the assignee, or the effects in his hands as such as-
signee. Such is not the case now. The statute has wrought
a radical change in the law in these and other respects. All
voluntary assignments for the benefit of creditors now stand
on the same footing. The effects of the assignor must in all
cases be distributed ratably among his creditors, and any pro-
visions in the deed of assignment directing otherwise will be
inoperative and void.

By the first section of the act in question every debtor
making an assignment for the benefit of his creditors is re-

quired to make out and annex to such assignment an inventory, under oath or affirmation, of his estate, both real and personal, together with a list of his creditors, showing their residence and place of business, if known, and the amount of their respective demands, and the assignment, with the annexed schedules thus made out, is required to be acknowledged and recorded, as in said section provided. By the second section the assignee is required to give immediate notice, in the manner therein provided, to the creditors, to present their claims to him, under oath or affirmation, within three months thereafter. By the third section the assignee is also required to file with the clerk of the county court where such assignment shall be recorded, a true and full inventory and valuation of the estate, verified by oath or affirmation, and he is thereupon required to enter into bond to the people of the State, for the use of the creditors, in double the amount of the inventory and valuation, conditioned that he will faithfully discharge his duties as such assignee. After the expiration of three months from date of notice the assignee is required, by the fourth section, to make an additional report, under oath, showing the number of creditors who have presented their claims for adjustment, and the amount of their respective claims, etc. The fifth section authorizes any person interested, as creditor or otherwise, to appear before the county court and contest the claims of any of the creditors, and the court is authorized, upon due notice, "to proceed to hear the proofs and allegations of the parties in the premises, and to render such judgment thereon as shall be just, and may allow a trial by jury thereon." The sixth section provides for a ratable distribution of the fund, and a final adjustment of all claims and a closing up of the trust, before the county court, within one year from the first term of court after the three months' notice provided for in the second section. The seventh section provides "that the assignee * * * shall at all times be subject to the order and super-

15—115 ILL.

vision of the county court when in session, or the judge of said court when not in session; and the said court, or the said judge, may, by citation and attachment, compel the assignee, * * * from time to time, to file reports of his proceedings and of the situation and condition of the trust, and to proceed in the faithful execution of the duties required by this act, and to obey the order of such court when in session, or the said judge when not in session, in relation to the complete and final settlement, distribution and paying over of the proceeds derived from said trust, or any part thereof, until final settlement and distribution is made." The eighth section, among other things, gives the county court power to issue summary process against the assigning debtor to compel him to answer, under oath, as to the condition of his estate, the names of the creditors, the amounts due to each, and their places of residence; also power to compel the delivery to the assignee of any property or estate embraced in the assignment. The ninth section requires the assignee, from time to time, to file with the clerk of the county court additional inventories and valuations of any property subsequently coming into his hands under the assignment, etc. The tenth section provides for the adjustment and payment of debts not due, with a reasonable abatement of interest, and also declares that all creditors who shall not exhibit their claims within three months from the publication of notice required by the second section, "shall not participate in the dividends until after the payment in full of all claims presented within said term, and allowed by the county court." The eleventh section authorizes the assignee to sell and dispose of the trust property in as full and ample a manner as the debtor himself could have done before the assignment, and to sue for and recover any estate or property embraced within the assignment, and generally to act and do whatsoever the debtor himself might have done in the premises. The twelfth section confers power on·the county court to

remove the assignee for any misconduct or breach of the trust, and appoint another in his stead; and in case of the death of the assignee, or his refusal to act, it is made the duty of the court in like manner to fill the vacancy thus occasioned, and such new appointee in either case is by this section made to assume all the duties and responsibilities, and is clothed with all the rights, powers and privileges of the original assignee. The thirteenth section makes every provision in an assignment giving one creditor a preference over another, inoperative and void, and directs that all debts of the assigning debtor shall be paid *pro rata.* The fourteenth and last section is as follows: "Full authority and jurisdiction is hereby conferred upon county courts, and the judges thereof, to execute and carry out the provisions of this act, and said courts shall be and remain open at all times for the transaction of business under this act."

A careful consideration of the several sections constituting the above act, particularly the seventh and last, leaves but little, if any, doubt in our minds that it is essentially, in its framework and detail, a general Insolvent law, and that it was so intended by the legislature. By its provisions a new and special jurisdiction is created and conferred upon the county courts of the State, in the exercise of which it is manifest they would, to say the least of it, be greatly embarrassed if any interference with them by other tribunals were permitted, where the jurisdiction has once attached. Indeed, to permit such interference would practically defeat the chief object of the statute, namely, to provide a convenient, expeditious and inexpensive tribunal, through the instrumentality of which an insolvent debtor may make an entirely equitable distribution of his effects among his creditors. If, after the jurisdiction of the county court has attached, third parties having real or pretended claims to or upon the trust estate were permitted, by means of process issued out of other courts, to take possession of the property in the hands of the

assignee, for purposes of litigation in such other courts, the county court by this means might be deprived of its jurisdiction altogether. In any event, it would necessarily so retard and embarrass the proceedings in the county court that it would be impossible to administer the estate in the manner or within the time prescribed by the act, and to that extent would render the statute inoperative. A construction leading to such a result ought not to be adopted. To give the statute practical effect in all its provisions, we feel constrained to hold, as we do, that upon the making, filing and recording of the assignment, with the lists and schedules annexed, the county court wherein such assignment is filed and recorded, in its character as an insolvent debtor's court, by operation of law at once acquires jurisdiction over and becomes *possessed* of all the property and estate embraced within the assignment, subject, of course, to all prior liens and just claims that third parties may have to or upon it. The fact that the legal title is in the assignee, and that he acquired it by the voluntary act of the assigning debtor, makes no difference in this respect. As a valid assignment can now only be made under the statute, and when so made the estate must be administered and distributed substantially in conformity with its provisions, it is a matter of little, if any, consequence, as to just where the legal title is or by what method it was acquired, except in so far as it affects the jurisdiction of the court. The assignee, the insolvent debtor, and all persons claiming an interest in or upon the fund, are subject alike to the summary jurisdiction of the court, and whatever rights, real or supposed, with respect to the fund, must primarily be litigated therein, and that there may be no failure of justice, the act, as we have already seen, clothes the court with power, when in its judgment the exigencies of the case require it, to order a trial by jury. While the legal title to the fund is in the assignee, the possession of it, as we have just seen, is in the court, and the assignee's relation to

the court is analogous, in some respects, to that of a receiver, or of an assignee in bankruptcy.

If effect is to be given to these general principles, and the statute is to receive a construction which will effectuate the objects and purposes of the legislature in adopting it, it is clear there was no right to replevy the goods in question, as was sought to be done. *Freydendall* v. *Baldwin*, 103 Ill. 329; *In re Vogel*, 7 Blatchf. 18.

The judgment of the Appellate Court being in harmony with the view here taken, it is affirmed.

*Judgment affirmed.*

DICKEY and SHELDON, JJ., dissenting.

Subsequently, upon an application for a rehearing, the following additional opinion was filed:

Per CURIAM: In overruling the petition for a rehearing in this case, it may be proper to add we do not understand the construction given to the statute to be obnoxious to the objection urged against it, namely, that it impinges upon the powers of other courts exercising general common law or chancery jurisdiction. The powers and jurisdiction of these courts are conferred by the constitution, and it is therefore not competent for the legislature to abrogate or restrict them. But what we intended to hold, and do hold, is, that in the matter of voluntary assignments, when the jurisdiction of the county court has once attached no other court has the right to interpose, for the purpose of adjusting any claims with respect to the property assigned or of administering the insolvent's estate, except, perhaps, under special circumstances a court of equity may intervene to prevent a failure of justice. In thus holding, we simply recognize and give effect to the familiar and long established rule that in cases of concurrent jurisdiction the court which first obtains it will have precedence.

The petition is denied.

*Petition denied.*

Mr. JUSTICE MAGRUDER: The petition for rehearing in this case has been considered since I became a member of the court. I dissent both from the original and the per curiam opinions. In my judgment the rehearing should have been granted.