## ATLAS S. STOUT ET AL.
## v.
## DANIEL SOWER ET AL.

*Mechanics' Lien—How Construed—Detached Premises not within—Note Payable " in Twelve Months "—Days of Grace—Lien Attaches from Date of Contract and is Superior to Subsequent Mortgage—Extension of Time—Jurisdiction of Circuit Court after Assignment of Owner of Premises—Destruction of Building.*

1.   While the Mechanics' Lien Act should be strictly construed, its construction should not be so illiberal and artificial as to impair the remedy thereby created.   Thus the statute should not be construed to exclude a contract providing for the giving of a note payable " in twelve months " on the ground that such contract necessarily extends the time of payment, including three days of grace, beyond one year.

2.   The lien for material and labor to be expended on a lot is fixed by the contract and attaches from its date, and it is superior to a mortgage lien acquired subsequently and before the labor and material are so expended.

3.   An extension of time for the completion of the work, or of the time of payment, does not forfeit the lien as against the claim of the mortgagee where the petition is filed within six months from the expiration of the time of payment, fixed by the original contract.

4.   The Circuit Court has jurisdiction to enforce a mechanics' lien upon premises, the owner of which has made an assignment, where the lien is for a larger sum than the value of the premises and the title of the assignee extends only to the equity of redemption.

5.   In the case presented, it is *held:*   That the lien does not extend to certain lots situated across a street from the lot on which stood the mill, in connection with which the lien arose, although said lots were used to some extent in operating the mill.

The cases of *Freydendall* v. *Baldwin*, 103 Ill. 325, and *Hanchett* v. *Waterbury*, 115 Ill. 220, distinguished on the question of jurisdiction.

[Opinion filed December 11, 1886.]

Appeal from the Circuit Court of Bureau County; the Hon. Dorrence Dibell, Judge, presiding.

Statement by Lacey, J. This was a petition to enforce a mechanic's lien, commenced in the Circuit Court by appellants, against Sower Brothers, the appellees, to recover the sum of $1,600, balance for remodeling and changing the mill of Sower Brothers into a roller mill, situate on lot 29, in Stoner's Addition to the Town of Princeton, Illinois, and to subject parts of lots 7 and 8, in subdivision of lot 13 of Stoner's first addition to Princeton, which joined on the south the said lot 29 to payment of said sum.

The petition was filed March 13, 1885, and it appears from the petition, answers and evidence that on the 30th of June, 1883, the appellants and Sower Brothers entered into a written contract by which the appellants were to remodel and change the latter's mill into a roller mill, they furnishing the material and wright work and to complete the mill, and appellants were to have the right to use all the old shafting. gearing and pulleys, belts, buckets and lumber that might be found suitable to the work in the construction of the roller mill. The mill was warranted to be first class, etc. The mill was to be completed and started in successful running order by the 15th September, 1883, consideration $6,600, $2,500 to be paid by Sower Brothers on July 10, 1883, and $2,500 when the mill was finished and started to successful and satisfactory results. For the balance, $1,600, the Sower Brothers agreed to give their notes, bearing seven per cent. interest, payable in equal payments, payable in six, nine and twelve months from the date of starting the mill. Sower Brothers were to take out all the old machinery and put the building in proper shape to receive the new work, and send such old machinery as might be necessary to the shop of Stewart, Mills & Temple, to Dayton, O., to be refitted, and to pay all freight and deliver the machinery in the mill.

Sower Brothers, at the time of making the contract, were the owners of said lot 29, on which was their mill, run for the purpose of manufacturing feed, and also the owners of parts

of said lots 7 and 8, lying south of and contiguous to lot 29, on which the mill was situate, only separated by a street thirty feet wide, and purchased by Sower Brothers some years after the mill was built in order to have an open space south. These lots were used somewhat in connection with operating the mill for the purpose of having cribs on them to hold corn to be ground in the mill for feed, and for the purpose of having a shed on it to put delivery wagon, horses and buggies while working at the mill. These lots are claimed to be part of the mill property, and subject to the lien, but this is objected to by appellees.

All of the material and labor which had been furnished by appellants was paid for by Sower Brothers before the filing of the petition, save the last $1,600. There was some delay on the part of appellants in completing the contract, and instead of finishing the work by September 15, 1883, it was not completed and finished till the 15th of October following. This delay is charged by appellants to be on account of the fault of Sower Brothers in not shipping the old material in time for appellants to refit it and return it in time to fill their contract; but this is denied by Sower Brothers, who claim that it was finished in time. It is hard to tell who is right, but probably it was somewhat the fault of each, and as we do not regard it as material we will not notice the question further.

It is certain, however, that Sower Brothers did not attempt to take advantage of the delay, but accepted the mill and gave their notes, dated November 1, 1883 due in six, nine and twelve months from date, in the manner provided in the contract except as to date. It appears that the notes were not taken in satisfaction of the appellants' claim, and are offered to be surrendered. In April, 1884, the mill was consumed by fire, and the said Sower Brothers becoming insolvent made a deed of assignment to one Eugene C. Bates, as assignee, in due form of law under the Insolvent Debtor's Act of 1877, of all their property and effects, for the benefit of their creditors; and said Bates accepted the trust and took possession of the assigned estate. This was all done prior to the filing of the petition. Bates sold a pair of scales which had been attached

to lot 29 for $50, and some iron, remains of the mill and de-
tached by the fire, realizing a total net amount of $265.75, all
of which was done by consent of appellants, Mrs. Paddock and
the assignee, and the money was to be paid out under the
order of the court in this case.   The notes above described,
given to appellants after the assignment, were placed in the
possession of the assignee for payment, and the appellants had
received a dividend on them of $197.58.   The opposing claim
of Mrs. Anne G. Paddock, a non-resident, originated from the
loan of money by her to Sower Brothers, for which the latter
gave their notes to her and Eliza Skinner, dated July 2, 1883,
and also a deed of trust given at the same time by Sower
Brothers on said lot 29 and mill, machinery and fixtures to
George S. Skinner, as trustee, to secure the same, and the
same was duly recorded July 7, 1883.   All these notes were
paid except something over $1,000 due to Mrs. Paddock and
$150 attorney fees in case of foreclosure, all of which it is in-
sisted is a superior lien on said lot and mill fixtures to the
claim of appellants for mechanics' lien.   The appellee, Mrs.
Paddock, took this trust and without notice of the contract
with appellants, and did not consent to any change in appel-
lants' contract with Sower Brothers.

Lot 29 was not worth to exceed $500 with the engine and
remains of the mill, and $300 is a fair valuation for lots 7
and 8.

All of the appellees, including the assignee, Bates, objected
to the jurisdiction of the Circuit Court on the grounds of the
existence of the assignment and what had been done under it.

The court, it appears, after taking default of Sower Bros.,
and duly considering the evidence and argument of counsel,
dismissed the petition for want of jurisdiction of the Circuit
Court, and from this decree this appeal is brought to this
court.

Mr. ROBERT FARWELL, for appellants.

When the material man agreed to furnish and did furnish
materials and they were placed in the mill, his claim for the
price thereof became a lien upon the property from the time

of making the contract. No notice was necessary, etc. Clark v. Moore, 64 Ill. 273, 279. A deed of trust made and delivered before, but not recorded until after the making of a contract for the building of a house, will not have priority over the lien of the material man, but the latter will have priority over the trust deed. Thielman v. Carr, 75 Ill. 385. The lien is not affected by the burning of the mill. A material man furnished boilers for a mill ; afterward the mill was destroyed by fire. The boilers were saved and sold under a prior trust deed. *Held,* that the material man had a first lien on the boilers, and was entitled to the money they brought at the sale. Gaty v. Casey, 15 Ill. 189.

It is not true that by the contract the time of payment is beyond a year from the time stipulated for the completion of the work. The fact that a suit could not be maintained on the note until the days of grace had expired, does not affect or change the terms of the notes. The notes would still become due by their terms on the days named, and if tender should be made on those days of the amount then due, the holder would be bound to accept it or lose his interest thereafter in case the tender should be kept good. Should a suit at law be brought on such notes the declaration describing them as falling due in six months and three days, nine months and three days and twelve months and three days, the notes would be excluded on the ground of variance. The notes offered in evidence would not be the notes described in the declaration. Roberts v. Corby, 86 Ill. 182.

Days of grace, as the words imply, are intended as a favor —grace—to debtors, to give them a chance to turn themselves, to give them a " breathing spell " and to meet their past due paper. A promissory note, indorsed after the date of its maturity, but within the days of grace, would be signed after due, so as to let in any just defense the maker might have. The note becomes due for the purpose of payment on the day named for its maturity. If not paid on that day it becomes past due paper, and the person taking an assignment the next day would not be regarded as an innocent purchaser, but it would not be due for the purpose of bringing suit upon it till the days of grace had expired.

Stout et al. v. Sower et al.

The County Court has no power except as given by the act providing for assignments for benefit of creditors. That act gives the County Court no power to entertain a bill in chancery. No power to make publication to get jurisdiction of a non-resident defendant is given in such case. No machinery is provided by which the County Court can exercise any of the powers given and created by the lien law. The record shows that one of the defendants, Anne G. Paddock, one of the mortgagees, was a non-resident and was brought in by publication. No way is provided by the Assignment Act by which the County Court can get her within its jurisdiction in a proceeding to enforce a mechanics' lien. Provision is made in case a creditor wishes to except to her claim. That is all, but nobody ever denied Sower Bros.' indebtedness to her. There is an entire absence of power in the County Court to exercise any of the rights given and created by the lien law. It never had any jurisdiction or right to exercise jurisdiction in this case. It never had concurrent jurisdiction with the Circuit Court in a mechanics' lien case. Such jurisdiction has never been conferred upon the County Court and it can exercise only such jurisdiction as is conferred by the Constitution or by general law. The County Court certainly has no greater jurisdiction under the Assignment Act, than it has under the Constitution in relation to matters of probate and settlement of estates of deceased persons. All persons having claims against the estate of a deceased person are required to present them in the County Court for adjudication at the time fixed upon by the administrator. Yet the Supreme Court held that a creditor of an estate was not bound to do so, but could maintain assumpsit in the Circuit Court, notwithstanding the County Court had full and complete jurisdiction expressly given by the Constitution and was in the exercise thereof, and the administrator was acting as such, under the supervision of the County Court, at the time of instituting the action of assumpsit. Darling v. McDonald, 101 Ill. 370.

Art. 6, Sec. 12, of the Constitution, gives the Circuit Court original jurisdiction of all causes in law and equity. Yet the claim is made that such jurisdiction is taken from the Circuit

Court and given to the County Court by mere implication
that by the mere act of Sower Bros. in making a deed of as-
signment, the Circuit Court is deprived of, and the County
Court given, jurisdiction to enforce a mechanics' lien.

This is a proceeding to enforce a lien specially given by
statute upon real estate. The interest that appellants have in
the real estate, never passed to the assignee by the deed of
assignment. It was not within the power of Sower Bros. to
convey such interest, and neither the County Court nor the
assignee had any power or supervision over such interest. All
the interest Sower Bros. or the assignee had was a mere equity
of redemption. Sower Bros. could only assign what they had
and that was all the assignee could take. Colburn v. Shay, 17
Ill. App. 289.

Messrs. SKINNER BROTHERS, for Anne G. Paddock and George
S. Skinner, appellees.

A mechanics' lien given by statute is in derogation of the
common law, is secret in its nature, and the statute should
therefore receive a strict construction. Brady v. Anderson,
24 Ill. 110.

The lien should not be extended to cases falling within the
reason but not provided for by the language of the statute; it
is opposed to common right and should be strictly construed.
Brady v. Anderson, 24 Ill. 110; Stephens v. Holmes, 64 Ill.
336.

A statute which gives a mechanic a lien is in derogation of
the common law, and must be strictly construed, and no per-
son can obtain a lien under it unless a clear compliance is
shown with the provisions of the statute. Canisius v. Merrill,
65 Ill. 67; Carney v. Tully, 74 Ill. 375; Belanger v. Hersey,
90 Ill. 70.

Mortgagees and others acquiring interests in property
against which a mechanics' lien is sought to be enforced have
a right to call for strict proof of all that is essential to the cre-
ation of the lien. Davis v. Alvord, 94 U. S. 545.

If the contractor can preserve his lien as against a trustee
or mortgagee by continuing the contract a month after the

time of the completion of the work has expired, without the knowledge, assent or authority of said trustee or mortgagee, then he may extend the contract a year, or for a period of several years, and still preserve his lien even to the injury of the trustee or mortgagee.

The evidence shows that neither the trustee nor the *cestui que trust* had any knowledge of appellants' contract when Sower Bros. made the trust deed, and further shows that the $5,000 which said trust deed secured, was all paid by said Sower Bros. to appellants. Notwithstanding appellants have received all the money which Mrs. Paddock loaned to Sower Bros., they herein ask the chancellor, as a conscionable act, to make their claim for a balance due them superior to the trust deed given to secure Mrs. Paddock for furnishing the very money which they received, although by their own negligence they failed to complete the work they agreed to perform within the time and in the manner agreed upon.

The fact that the contract required the notes to be given and that such notes were given, and that the note last maturing was by the contract to be made payable twelve months after the time stipulated for the completion of the work, is in legal effect contracting that the time of payment was beyond one year from the time stipulated for the completion of the work.

At an early period days of grace were in fact what the words imply, an indulgence or respite granted as a matter of favor; but they have at length ripened into a *right* as clear and definite as any conferred by the positive stipulation of the parties; so there is now no idea or notion of favor connected with them, and interest is charged and allowed for them just the same as if they formed a part of the note or bill itself; and for all practical purposes a note entitled to days of grace becomes due at the same time and in the same manner as if these days were added to the time it had to run and the note drawn without grace. Edwards on Bills and Notes, Secs. 517 and 518; Bank of Utica v. Wager, 2 Cow. 712.

The days of grace on negotiable notes constitute a part of the original contract, and the negotiability of the note is as

perfect and unrestricted during those days as before their commencement.    The Savings Bank of New Haven v. Bates, 8 Conn. 505.

By the act of 1861 days of grace on notes are made to exist as a right.    The mortgagee in a chattel mortgage is not required to take possession of the mortgaged property, in order to hold it against creditors and subsequent purchasers of the mortgagor, until the expiration of the days of grace on the note which the mortgage is given to secure.    Reese v. Mitchell, 41 Ill. 365; Arnold v. Stock, 81 Ill. 407.

The condition of a mortgage on real estate given to secure the payment of a note is not broken until the expiration of the three days of grace which is allowed on the note.    Coffin v. Loring, 5 Allen, 153.

It now seems to be well settled that in cases of assignment for the benefit of creditors the County Court is invested with complete and full jurisdiction over the trust fund and the assignee, until the property is disposed of and the proceeds distributed to those entitled to share therein, and has power to determine the priority of the liens of the several creditors; and that both the property and fund involved is in the hand of the law and under the jurisdiction and supervision of said court.    Freydendall v. Baldwin, 103 Ill. 325; Mersinger v. Yager, 16 Ill. App. 260;    Colby v. O'Donnell, 17 Ill. App. 473; Hanchett v. Waterbury, 115 Ill. 220.

Messrs. ECKELS & KYLE, for Eugene C. Bates, assignee of Sower Bros., appellee.

In cases of concurrent jurisdiction the court which first obtains it will have precedence.    Hanchett v. Waterbury, 115 Ill. 220; Whitney v. Stevens, 97 Ill. 482.

A mechanic's lien only extends to the lot or parcel of land on which the building is erected.    Chap. 82, R. S. 1874, Sec. 1, 665; Parmelee v. Hambleton, 19 Ill. 615; Tracey v. Rogers, 69 Ill. 662;  Bayard v. McGraw, 1 Ill. App. 134.

LACEY, J.    It appears from the foregoing statement of the case that there are three main and important questions pre-

sented for our determination before we can arrive at the end of this investigation.

*First*, Is the appellants' claim for mechanics' lien paramount and precedent to that of Anne G. Paddock created by her trust deed? *Second*, Has the appellant any lien on lots 7 and 8 for material furnished and work done on lot 29? *Third*, Did the Circuit Court have jurisdiction to try or hold the case?

We will take up the questions in the order above presented, and in so doing first consider the several objections raised by attorneys for appellees to the existence of the claimed lien embodied in the first proposition in the manner therein claimed by appellants.

It is first urged by the appellees that by the very terms of the appellants' contract with Sower Bros. for the remodeling and changing the mill, no lien under the Mechanics' Lien Act could attach for the following reasons, viz.: The statute under which the lien was created, if at all, provides " that the time of completing the contract shall not be extended for a longer period than three years, nor the time of payment beyond the period of one year from the time stipulated for the completion thereof;" that the contract was in writing, dated June 30, 1883, and the mill was to be completed and in running order by the 15th of September of the same year; that as to $1,600 of the amount to be paid to appellants, Sower Bros. were to give their three notes in equal amounts due respectively in six, nine and twelve months from the starting of the mill; that the last note by the terms of the contract, which must alone govern in the case, in legal effect would extend the time of payment by means of the three days grace allowed by law in the payment of such instruments, beyond the statutory limit of one year from the time stipulated, September 15, 1883, for the completion of the contract.

It is argued that in legal effect and reality a note is not due until three days after the time fixed by its terms to become due. But it may be answered that by the terms of the contract itself, the last note was to be payable, that is due, twelve months from the time the mill was running. Did not the contracting parties have this matter of the " days of grace "

in contemplation when the contract was executed, and was it not the intention that the note should be so written that with the days of grace added it would fall due past twelve months from September 15, 1883? The parties must be presumed to know the law and to contract with reference to it, and when the contract was so written as to require the last note to be payable in twelve months, it meant what its terms expressed and must be considered with reference to the law on the subject of "days of grace." If three days of grace are to be added at the end of twelve months when the last money is payable, then, of course, the last note would not be payable in twelve months, as the contract declares it shall be. It would be twelve months and three days. It is only by assuming that the true interpretation of the contract is that the expression payable "in twelve months after the mill is running," means that the note should be written in terms when given "due in twelve months" from such date, that the point contended for by appellees can be maintained in any event. But the contract is not expressly so written and if the words "payable in twelve months after September 15, 1883," are to be given an interpretation to make the day of payment fulfill the words of the contract and the rule of law in regard to the days of grace is to operate thereon, the note must in its terms be written for three days shorter time of payment than without the application of such law; otherwise the terms of the contract would not be strictly and logically true.

Whether the contract in question should be so construed as to require the note to be written for the full twelve months, and by operation of the rule of law in regard to "days of grace," the time for its falling due would be twelve months and three days, or not, we are clearly of the opinion that the statute ought not to be so construed as to render the contract void as being in violation of law.

The Mechanics' Lien Act no doubt should be strictly construed, as it has been so held by our Supreme Court, which is binding on this court, yet we do not understand by such holding that the construction should be so illiberal and artificial as to impair the statute or to prevent relief being granted under

it freely by the courts. A court of high authority has indeed held that " the statute giving liens to mechanics and laborers for their work and labor, is to be liberally construed so as to afford the security intended." Davis v. Alvord, 94 U. S. 545.

This contract then, we hold, was capable of having a mechanic's lien created under it by the furnishing of the material and labor therein mentioned to the contractees, Sower Brothers, on the lot in question.

Again, appellees contend that as to Mrs. Anne G. Paddock, the holder of the balance of the unpaid notes secured by her trust deed, amounting to $1,000, the lien claimed by the appellants, if any ever existed, was lost by reason of the contract not having been completed within the time fixed by it, to-wit, by the 15th day of September, 1883, it not having been completed and the mill accepted and set to running till the 15th of October following, and because the notes instead of being given according to contract, bearing date September 15, 1883, and running six, nine and twelve months, they were by agreement between appellants and Sower Brothers dated November 1, 1883, and ran respectively six, nine and twelve months from that date, and that this was done without the knowledge or consent of the appellee, Mrs. Anne G. Paddock, or her agent or attorneys.

The appellants' contract with Sower Brothers was dated June 30, 1883, and the trust deed from Sower Brothers to George S. Skinner, trustee for Anne G. Paddock, and the notes to her security by said trust deed, were dated July 2, 1883, and the deed recorded in the proper office July 7, 1883. It is not contended nor could it be successfully argued that Mrs. Paddock could acquire a superior lien on lot 29 to the lien claim of appellants on the same lot by reason of her trust deed having been dated and recorded prior to the time of the furnishing by the appellants of the greater part of the labor and material and placing them on the lot, although she may have accepted such deed without notice of the existence of the latter's prior contract for changing and altering the mill. The entering into the contract by the lot owner with the material men, fixes

the lien from the date of such contract for the material and labor subsequently expended on the lot, superior to any subsequent trust deed or mortgage acquired, even though the material or labor be put on the lot after the · trust deed or mortgage be executed and recorded.

Although the trustee or mortgagee had no notice of the contract or the furnishing of such material, such contract or claim for the material need not be recorded, nor need the agreement, under the first section of the Act of 1861, be made for any specified amount with the owner of the lot if the material was required for the use in the progress of the building.

"When the contract to perform the labor is entered into the lien attaches." This is the clear and obvious meaning of this (the first) section. The court by its decree neither creates nor confers the lien. "It existed and attached to the lot from the time the contract was made to make the improvement." It only remains after the contract, to place it on the lot. "These liens are secret, attaching simply by furnishing the labor or materials in constructing the building." Clark et al. v. Moore et al., 64 Ill. 273: Theilman v. Carr, 75 Ill. 385; Brown v. Moore, 26 Ill. 425. From these citations it will be seen that the appellants had a valid lien on said lot 29 for the balance of the unpaid price of their material and labor put into the mill, unless, by the extension of the time of completion of the work, or the extension of time as to the payment of the notes, or some one of them, their lien as against the mortgagee's (Mrs. Paddock's) claim, has been forfeited.

Whether this has been done, as is contended by appellees' counsel, will be our next inquiry. The contract provided a less time for the completion of the mill than three years, and also the time added by way of extension to the original time for completion would not make three years from the time of commencement, so the statute was not violated in that particular. But the time to which the last note was extended, to wit, from September 15, 1883, the time, by the provisions of the original contract, the mill was to have been completed, to November 1, 1884, the time to which the payment of the note was

extended, was more than one year or even more than one year from October 15, 1883, the time the building was completed, and to which the extension was made by consent of Sower Brothers.

It is insisted as to Mrs. Paddock, for whose benefit the trust deed was taken, there could be no change of the original contract that would affect her interest and if one were made the mechanic's lien as to her would be forfeited. This is no doubt true in a measure, but we think not to the extent claimed. In Simon v. Block, 16 Ill. App. 450, it was held, " that the remedy to enforce a mechanic's lien is exclusively the creature of the statute, deriving its existence only from positive enactment and not arising out of, or the issue of, the contract for labor, or dependent on the motives which suggests its being enforced." It is further said, "that the question of lien or no lien depends on the contract as made originally and not what may happen in the execution of it." In the case of Cook et al. v. Heald et al., 21 Ill. 425, the court says in regard to the statute above quoted, "this provision absolutely requires that the time for its performance and the payment of the money shall be determined at the time when the contract is entered into and not by alterations and changes which may be made in the agreement after it is entered into."

Where the time for the payment is extended by taking notes on time, the claim for the amount due under mechanic's lien is extended thereby. Cox v. Keiser, 15 Ill. App. 432. In the case of Nibbe v. Brauhn, 24 Ill. 268, it was held that if the parties deem it necessary further time for the completion of the work be given the contractor, the time may be extended, and by allowing the work to proceed without objection by the owner of the lot it *is* extended. But in such case only the time of performance is changed, not the contract otherwise.

In the above cases the contract was between the original parties to the contract and there were no other creditors or incumbrancers whose rights were affected. As between the original parties there is no limitation as to the time of commencement of the suit, but as to other creditors and incum-

brancers the suit must be commenced within six months after the last payment for labor and material shall become due and payable.    (See Sec. 24 Mechanics' Lien Act.)

According to the principles above referred to, the character of the lien as between the parties to the original contract and also as between appellants and subsequent incumbrancers, became fixed by the signing of the original contract, and the only thing remaining to complete it was the furnishing of the labor and materials on the lot by appellants, which was done. The extension of the time for completion could not affect the lien thus created, neither could the extension of the time of payment, at least as between appellants and Sower Brothers. The question now arising is, could such extension be made as against the appellee, Mrs. Paddock?

The only light we have by any decision of our Supreme Court in a case like this, is obtained from the opinion in the case of Brown v. Moore, 26 Ill. 481. By the contract in that case the work was to be completed by June 1, 1857, and the last payment was to be made by December 1, 1857. But the work was not completed till April 23, 1858. The rights of mortgagees were involved the same as here. The court had grave doubts whether the six months Statute of Limitations did not commence to run from December 1, 1857, the time when the last money was due. It was unnecessary to decide that point in the case, but it decided that the debt was due and the statute began to run in favor of the mortgagees on April 23, 1858, and an extension given by agreement between the contractor and owner of the building and mortgagor for the payment due under the lien from April 29, 1858, for one year and four months, could not be made to stop the running of the statute which, at least, commenced to run from April 23, 1858, six days before the extension was given. By this extension the six months limitation expired before the suit was or could be brought, counting even from April 23, 1858, saying nothing of December 1, 1857, the time fixed in the contract for the last payment.

In reference to the question the court say:   "As between themselves the parties to the contract could modify as they

chose, but not in such a way as to affect the rights of others. Other parties had a right to take security on this land with reference to this lien and the time when it should expire, and these could not be cut out by any agreement between other parties which would have the effect to extend the time when the lien should expire."

In the case at bar, the giving the appellee, Mrs. Paddock, the benefit of all she could claim with reference to the Statute of Limitations as fixed by the last payment, she could not complain. By the original contract the work was to be completed September 15, 1885, and in twelve months from that time the last note was to be paid, which carried it to September 15, 1884, and six months from that time would be March 15, 1885, and March 18th, if days of grace be added; but the petition in this case was filed March 13, 1885, in apt time to save the Statute of Limitations the same as if everything had been carried out according to the terms of the original contract.

If it be conceded that the change of the time for the payment of the notes might be an injury to appellee, Mrs. Paddock, it may be answered that if they were changed without her consent and such consent were necessary and she so desired, she might redeem the property by paying the amounts due, according to the original contract on the lien at any time when so due, notwithstanding the extension of time, she not being bound by such extension. As the case is presented, we can see no substantial injury done to appellee, Mrs. Paddock, by the change in the payments of the amount due under the original contract. So holding, the appellants had a valid lien for the amount of their claim on the lot 29 and the mill at the time it burned down, and the lien continued to the scales and mill remains after they were severed by the fire. Gaty v. Casey, 15 Ill. 189.

The next question raised, and as above stated is, have the appellants any lien on lots 7 and 8 for material furnished and labor done on lots 29? We think clearly they have none. Lots 7 and 8 were separated from lot 29 by a street thirty feet wide, and no part of the mill structure or any of its ap-

Stout et al. v. Sower et al.

purtenances were on or touched lots 7 and 8. The mere fact that the Sower Brothers had corn-cribs on these lots out of which they took corn to grind in the mill, or that they had a horse-shed on them under which they hitched their horses and put their buggies that conveyed them to the mill while they were operating it, and other like circumstances, could have no effect to make those lots a part of lot 29 within the, meaning of the statute. Parmelee v. Hamilton, 19 Ill. 615; Tracy v. Rogers, 69 Ill. 662. Bayard v. McGraw, 1 Ill. App. 134; see also Sec. 1, Chap. 82, R. S. 1874.

We will now consider the third and remaining question, did the Circuit Court have jurisdiction to try or to hold this case under its control? The court below dismissed the petition, as the record states, for want of jurisdiction, and may not have considered the merits of the case. We have considered all the questions in the case, however, as the decree should not be reversed unless the petition has merits and the appellant a right of recovery and all the questions have been fully argued by counsel on other side.

It appears that the ground relied on to justify the action of the Circuit Court in dismissing the petition is that Sower Brothers had become insolvent and had made an assignment for the benefit of their creditors to Eugene C. Bates, of all their property and effects, under the act entitled, "An Act Concerning Voluntary Assignments and Conferring Jurisdiction therein on County Courts;" in force July 1, 1877. And that the assignee, Bates, had qualified, accepted the trust and had taken possession of the property of said insolvents and was proceeding to administrate the estate under the said assignment and the said act before the County Court. It is insisted by appellees, that under the law the appellants had no right to file their petition in the Circuit Court and had no right to any relief therein; but that they must seek their remedy in the County Court, which it is claimed has ample authority to adjust all questions concerning the mechanics' lien claim of the appellants and to give them the priority which they claim if they are entitled to it under the law. In fact that in all cases the jurisdiction of the County Court under

the act is exclusive after it once acquires jurisdiction of the insolvent's estate. Appellees rely principally upon the decision of the Supreme Court in the two cases of Freydendall v. Baldwin, 103 Ill. 325, and Hanchett v. Waterbury, 115 Ill. 220. The court in Freydendall v. Baldwin, 103 Ill. 325, used the following language in regard to the jurisdiction of the County Court in such case : " Thus it is seen that the whole management of the estate of insolvent debtors under voluntary assignments is committed to the jurisdiction of the County Court, and by Sec. 14, full authority and jurisdiction are given to such courts in regard to such matters. How the trust funds in the hands of the assignee are to be paid over and distributed are matters for the determination of the County Court where such proceedings are pending, and its judgments and orders in that respect can only be reviewed as the judgments and decrees of others of competent and original jurisdiction are reviewed, by the Appellate Courts."

" A court of chancery will not assume jurisdiction on a bill to interfere and direct how a County Court shall distribute a trust fund over which it has complete jurisdiction, by positive statute, unless under special circumstances."

These observations were made with reference to the facts in that case, which were, in substance, that the complainants in the bill, while recognizing the validity of the assignment, were asking the Circuit Court to declare certain confessed judgments by the debtor prior to the assignment, and execution levies on the property of the debtor also prior to the assignment, void as against the personal goods in the control of the assignee. This relief could be obtained in the County Court, especially under the 5th section, which gives one creditor the right to contest the claim of another, the County Court having the power to consider equitable rights, and the assignee himself might contest the question, under the 7th and 14th sections.

In the case of Hanchett against Waterbury, 115 Ill. 220, the assignee having in possession certain personal estate of the insolvent, it was sought to be replevied out of his hands by writ issued from the Circuit Court by one claiming title to the property. The County Court, as held, properly enjoined the

Stout et al. v. Sower et al.

Sheriff from the execution of the writ. The plaintiff should have gone to the County Court to contest the title. The authority of the County Court is plain enough, as above shown. The court, in passing on the case, calls the act in question, essentially in its framework and detail, a "general insolvent law."

The court says: "To permit interference with the assignee in his duties after the County Court's jurisdiction had attached would defeat the object of the law." It is held that third parties, having real or pretended claims upon the trust estate within the jurisdiction of the County Court, can not be allowed to sue in other courts for it.

"The County Court has jurisdiction, and is possessed of all the property and estate of the debtor by means of the assignment, subject to all prior liens and just claims of third parties; and that the legal title is in the assignee, acquired by the voluntary act of the debtor, can make no difference, as a valid assignment can only be made under the statute, and it is but little matter where the legal title is, in so far as it affects the jurisdiction of the court. The possession is in the court, not the assignee. The position of the assignee in relation to the estate is analogous, in some respects, to that of a receiver or assignee in bankruptcy."

In the *per curiam* opinion filed, on overruling the petition for rehearing, the court hold that while the Circuit Court has general chancery powers, it can not be permitted to interfere in respect to the property assigned after the jurisdiction of the County Court has attached, except under special circumstances; a court of equity may interfere to prevent a failure of justice.

The facts and circumstances of the case before us are widely different from the facts in the above two cases cited, and we think must come within the exception of the rule as above announced. We will consider them for a moment. The value of lot 29 is not to exceed $500. The unpaid claim due Mrs. Paddock, secured by the trust deed, is $1,000. The claim of appellants is over $1,600. What title has the assignee in lot 29? Evidently only the equity of redemption;

and the County Court only has possession of the same, and that is nothing, and would still be nothing even if the lot were worth $1,000. It is evident that the assignee has no assets in this equity of redemption, and could not have under any circumstances.

If the County Court had jurisdiction at the suit or application of the assignee to summon the trustee of the trust deed, and Mrs. Paddock and appellants before it, and having full jurisdiction, should order the sale of the lot free from all incumbrances, it would have to hand the money arising from the sale to the appellants or Mrs. Paddock, and no money would be available for the general estate, and this would be a pure expense for no beneficial purpose. But does the County Court have any such chancery jurisdiction? Jurisdiction to remove clouds on title to real estate, to issue summons to all parties interested, including mortgagees? Can it order notice to be given to non-residents by publication? Mrs. Paddock is a non-resident. We find no express warrant in the act for such proceedings, and we can not see in the not very comprehensive language of the statute any implied power. The 5th section allows one claimant to contest the claim of another, but here Mrs. Paddock has not brought mortgage into question before the County Court. There is no question concerning it except with the appellants, and the holder of the note secured by the trust deed is not an adverse claimant before the County Court as to any property in which the assignee has any interest. The 7th section has no reference to a question like this. The 11th section authorizes the assignee to dispose of the estate the same as the assigning debtor could have done. The assignee could sell the equity of redemption, but he would receive nothing therefor. The 14th section only gives the County Court full power to carry out the provisions of the act, but none of the provisions of the act covers a case like this. As we understand the practice in bankrupt courts, where the court has full jurisdiction over all equitable claims and liens on real estate including mortgaged premises, it is, where the mortgage exceeds the value of the real estate, to never undertake to sell the mortgaged property divested of the lien,

but to refer the mortagee to his remedy on the mortgage in some other court; and the Bankrupt Court has largely more power than the County Court. See Sec. 5075, Bump on Law of Bankruptcy (9th Ed.).

In this case the only possible contest that can arise is between the appellants and Mrs. Paddock, claiming under the trust deed. Whatever the appellants may recover in the case it will be taken from Mrs. Paddock and not from Bates or the estate of Sower Brothers. The assignee is the mere nominal holder of the equity of redemption, not worth one cent to him or the estate. He could not possibly be impeded or interfered with in his duties as assignee in any degree by this suit. This suit was by the court below dismissed, and if that decree stands the appellants lose their lien because the six months limitation has run against it.

We are of opinion that whatever may be decided about the right of the appellants to proceed in the Circuit Court to final judgment and sale of the lot before the assignee had settled the estate of Sower Brothers, the court should have held the case in court, simply staying proceedings till the County Court acted. The statute, Sec. 4, Chap. 82, provides "That the lien given by this act may be enforced by bill or petition in any court of record of competent jurisdiction in the county in which the land or lot or some part thereof lies." By another section the suit must be commenced within six months as against other incumbrancers. Now as the County Court has no jurisdiction to foreclose a mechanic's lien as against a *cestui que trust*, and a trustee making no claim in the County Court to the property, the fee title to which is already in the trustee, how is the lien holder to preserve his rights except by bringing his petition in the Circuit Court? The trustee and Mrs. Paddock might rely wholly on their security and make no claim in the County Court and if they made any it might only be after exhausting the lot security. It might be years before the trustee foreclosed the trust deed and long after the bankrupt estate was settled up by the assignee.

" A mechanic's lien, which derives its existence wholly from a State statute, and the continuance of which is by such statute made dependent on the commencement of a suit within a prescribed period, is not preserved as a valid incumbrance on the property when no suit is commenced in the State Court, and no step taken in the Bankrupt Court equivalent to such suit, within the time limited by the statute for the preservation and enforcement of the lien, although proceedings in bankruptcy are commenced in that period." In re Williams, 14 Bankr. Reg.

"Such lien claims may be filed in the State Court after the commencement of the proceedings in bankruptcy. These steps are necessary to keep the lien alive, and can not be deemed an encroachment upon the authority of the Bankrupt Court. No sale can be made during the pendency of the proceedings in bankruptcy. The State Court will order the suit to stand continued to await the result of the action in the Bankrupt Court." Clifton et al. v. Foster et al., 3 Bankr. Reg. 656; S. C., 103 Mass. 233; In re Coulter, B. R. 64; Keller v. Demmond, 68 Penn. 449; see notes to Sec. 5075, and notes on page 599 Bump's L. and P. of Bankruptcy, 9th Ed. So, at all events, if the same rule applies, and we see no reason why it should not, in the County Court as it does in the Bankrupt Court, it could not have been any infringement on the jurisdiction of the County Court by filing this petition in the Circuit Court, as the statute expressly requires.

The statute in this respect has certainly not been repealed or changed by the insolvent act in question. At all events, the petition should not have been dismissed.

But we think the court should have proceeded to final decree in the case. The $265.75 received for the scales and other remains of mill irons, etc., should be allowed appellants in the final decree, although this part might come under the rule of the above cases of Freydendall v. Baldwin, 103 Ill. 325, and the other as to the control of the County Court, yet as the assignee agreed to hold it subject to this decree, and as the Circuit Court holds jurisdiction on other grounds, it may

go on and do complete justice and settle the entire matter. For the above reasons the decree of the Circuit Court is reversed and the cause remanded with directions to grant the relief as indicated by this opinion.

*Decree reversed and cause remanded.*