## JOHN NEWLIN, Adm'r, etc.,

### v.

## JOSEPH BAILEY ET AL.

1. PARTNER OR CREDITOR.—The court is of opinion that the written contract in this case does not constitute a contract of partnership, but that the party of the first part, not participating in a share of the losses or profits and receiving interest semi-annually upon the amount loaned, was a creditor.

2. HOLDING ONE'S SELF OUT AS PARTNER—LIABILITY.—Where the evidence tended to show that a party loaning a bank $10,000, held himself out as a partner, acted as its president and took part in most of its business transactions. *Held*, that should it appear that any of the bank's debts, contracted before such party's death, were created under such circumstances as to hold him as a partner as to third persons, the share coming to his administrator out of the assets assigned (the officers of the bank having made an assignment) should be subjected, as far as need be, to the payment of the balance due such creditors after receiving their *pro rata* dividends.

3. JURISDICTION OF COUNTY COURT.—For adjusting these equities a county court has as full and complete jurisdiction as a court of equity.

APPEAL from the Circuit Court of Vermilion county; the Hon. J. W. WILKIN, Judge, presiding. Opinion filed July 3, 1884.

Mr. W. R. LAWRENCE, for appellant; that the contract did not constitute a contract of partnership, cited Irvin v. N. C. & St. L. Ry. Co., 92 Ill. 108; Adams v. Funk, 53 Ill. 219; Smith v. Vanderburg, 46 Ill. 39; Price v. Alexander, 2 G.

Greene (Iowa), 427; Lowry v. Brooks, 2 McCord, 421; Bailey
v. Clark, 6 Pick. 372; Simpson v. Feltz, 1 McCord, Ch. 219;
Heskith v. Blanchard, 4 East, 141; Elgie v. Webster, 5 M. &
W. 518; Parsons on Part. (top p.) 287; Story on Part. § 18;
Collyer on Part. § 264; Gow on Part. p. 9; 3 Addison on
Contracts, §§ 1294, 1302.

In probate matters, equitable claims are considered: Hurd
v. Slaten, 43 Ill. 348; Garvin v. Stewart, 59 Ill. 229; Moore
v. Rogers, 19 Ill. 347; Moline Water Power Co. v. Webster,
26 Ill. 233.

Messrs. MANN, CALHOUN & FRAZIER, for appellees.

McCULLOCH, J.   About the first day of July, 1877, Elam
Henderson, W. O. Mendenhall and William F. Henderson
started a bank in Georgetown, Illinois, called the Citizens'
Bank, for which Elam Henderson furnished all the capital,
amounting to about ten thousand dollars in money and notes.
On the 9th day of April, 1878, said Mendenhall went out and
John Henderson came into the bank.   An agreement in writ-
ing was then entered into between Elam Henderson, William
F. Henderson and John Henderson as follows:

"Agreement between Elam Henderson, first party, and
William F. and John Henderson, second party, made April
9, 1878.   Said Elam agrees to furnish said William and
John from $10,000 to $15,000 in money and approved notes,
to be used by them in the banking business at Georgetown,
Vermilion county, Illinois, under the name of The Citizens'
Bank, for which they agree to pay the said Elam interest at
the rate of eight per cent. per annum, payable semi-annually,
on the 1st day of July and 1st day of January of each year.
Said agreement to be in force from January 1, 1878; also
to pay said Elam in cash or approved notes whatever amount
may be furnished by him to be used in said banking busi-
ness, at the expiration of five years.   Further agreed that if
any of the notes accepted by said William and John should
prove invalid, said Elam agrees to take such notes as his prop-
erty, giving proper credit for the same; said William and

John agreeing to use due diligence in making such notes secure.

That said parties herein named, or any other party who may in the future be associated with said firm, are privileged to take additional stock, as may be agreed to by the members of the firm.

William and John agree to perform the labor necessary for the carrying on of said business, upon terms upon which they may agree among themselves.

The member becoming dissatisfied may be permitted to withdraw from the firm, and shall be entitled to his full share of stock and profits that may accrue therefrom."

Elam Henderson furnished all the capital upon which the bank was operated under this new arrangement until July, 1879, when John Henderson went out and Titus Bennett took his place in the bank, the latter assuming all its liabilities to the same extent as John Henderson had been liable for the same, after which the business continued as before. This arrangement was made between Titus Bennett and William F. Henderson, the latter acting for Elam and John Henderson, who assented to the arrangement.

Elam Henderson died intestate, on the second day of March, 1881, having in his will made the following bequest:

· "3. I give and bequeath to Olive Newlin, to have and to hold during her natural life, all my stock in the Citizens' Bank, of Georgetown, and at her death to her heirs, and if she die without issue, then to her sister and brother, Florence and William Newlin, and to be turned over to her within one year from January 1st, 1882;" and having by the same will appointed said Titus Bennett and William F. Henderson his executors, who took upon themselves the trust thereby imposed.

In the list of notes and accounts belonging to the estate of said Elam Henderson, filed in the county court by said executors as part of their inventory, appears the following item, viz.: " Bank stock—principal, $10,000." In said inventory also appears the following item, under the head of " Moneys and credits," viz.: " Money on hand at time of decease deposited in Citizens' Bank, $2,575.26."

It appears from the evidence that at the end of every six months during his lifetime the sum of $400 was placed to the credit of Elam Henderson, on his deposit account, for interest upon what was known as his capital or capital stock, after which the profits were equally divided between the other two.

After the death of Elam Henderson the same course was pursued, only that the interest upon the capital or stock bequeathed to her by the will was paid to or passed to the credit of Olive Newlin.

Matters remained in this situation until the 24th day of · February, 1882, when William F. Henderson, acting for himself and for and with the consent of Titus Bennett, made a deed of assignment to appellees of all the property and assets of the Citizens' Bank, and none other, for the benefit of all the creditors of said bank, to be paid *pro rata*, and with said deed of assignment made a schedule of all the persons who had claims against the said bank, as provided by the statute. Among these claimants appears the following, viz.: " Olive Newlin, as legatee of Elam Henderson, deceased, Georgetown, Ill., $10,000."

The assignees then proceeded under said assignment as provided by law, in the county court, when Titus Bennett, as one of the executors of Elam Henderson, deceased, filed a claim against said assignees, supported by his own affidavit, in substance that Olive Newlin had a claim against the Citizens' Bank in the sum of $10,000, on account of legatee of Elam Henderson, deceased, and that the same was justly due her from said bank after allowing all just credits and set-offs. This claim was filed June 27, 1882. To this claim exceptions were filed on July 13, 1882. After that date John Newlin seems to have been appointed administrator *de bonis non*, with the will annexed, of the estate of said Elam Henderson, deceased, after which the said claim was prosecuted in his name. The assignees again filed exceptions to the allowance of the claim, and the cause having been heard by the court without a jury, the claim was disallowed. From that order the administrator appealed to the circuit court, where, upon a

·trial before a jury, a verdict was rendered in his favor, but the same was set aside by the court and a new trial granted. Upon the second trial a jury was waived, and the cause submitted to the court. The issues were found for appellees, and a judgment rendered in their favor, from which judgment the administrator has appealed to this court.

The principal question in the case is whether by virtue of the contract entered into April 9, 1878, between Elam Henderson, William F. Henderson and John Henderson, and the subsequent change in the membership of the bank by which John Henderson retired and Titus Bennett came in, the said Elam Henderson became a partner in the bank, or whether he became a creditor of William F. Henderson and Titus Bennett, assignors to appellees. If the former, then the administrator has no claim against the assignees, but must be postponed until the debts of the bank are paid, after which if there is any surplus he will be entitled to succeed to the rights of the deceased partner. If the latter, the claim should have been allowed.

We are of the opinion the written contract of April 9, 1878, does not constitute the contracting parties a partnership. It purports upon its face to provide merely for a loan of money and notes to William F. and John Henderson, to be used by them in the banking business. It does not provide that he shall participate in the profits or share any of the losses of the business. On the contrary he was to have returned to him at the end of the time mentioned, his entire loan, and was to have interest on the same at eight per cent. per annum, payable semi-annually. The other parties to the contract understood it in this light, for they credited up to him at the end of each half year his interest, but no profits, and then divided the profits equally between themselves.

After his death they recognized his estate as a creditor of the bank in the various ways above mentioned, and when they made the assignment they put in this claim as one of the debts to be paid by the assignees out of the assets assigned. As between themselves, therefore, we can not see that either by the contract or by their subsequent dealings with each

other they ever became partners, but Elam Henderson was merely a lender and the other parties the borrowers. They therefore owed him $10,000 at the time of his death, and the same ought to have been allowed against their assignees.

There is, however, another feature of the case which deserves attention. The schedule of debts attached to the deed of assignment is not set out in full in this record, and we can not tell whether or not any of the debts thereby provided for were contracted before the death of Elam Henderson. There are some facts appearing in this case which tend very strongly to show that he held himself out as a partner in the bank. In fact he acted as its president and took part in most if not all of its business transactions. Should it be made to appear by competent evidence that any of the debts of the bank contracted before his death were created under such circumstances as to hold him as a partner as to third persons, then the share coming to the administrator out of the assets assigned to appellees ought to be subjected, as far as need be, to the payment of the balance due such creditors after receiving their *pro rata* dividends.

These equities can be adjusted by the county court by first making a dividend of the principal fund among the creditors of the bank, and then, if it should appear that Elam Henderson in his lifetime had made himself responsible for any of its debts, his share of the principal fund, so far as necessary for that purpose, can be distributed *pro rata* among such creditors until the balance due them shall have been satisfied. For this purpose a county court has as full and complete jurisdiction as a court of equity. Freydendall et al. v. Baldwin, 103 Ill. 325.

The judgment of the circuit court will therefore be reversed and the cause remanded for further proceedings in conformity with the views herein expressed.

Reversed and remanded.