JOSEPH TAYLOR *et al.*

*v.*

HENRY SEITER *et al.*

*Opinion filed October 25, 1902—Rehearing denied December 11, 1902.*

1. DEEDS—*it is essential to delivery that grantor part with possession of deed.* It is essential to a valid delivery of a deed that the grantor part with the possession of the deed and all control over it.

2. SAME—*possession of land by a grantee does not take the place of delivery of deed.* The possession of land by the grantee in an undelivered deed may serve as notice of title, and, with other facts, may constitute part performance of a verbal contract to convey, but it does not take the place of delivery of the deed and cannot operate as a conveyance.

3. SAME—*what does not show delivery of deed.* Testimony by the grantor in a deed to a corporation, of which he was chief stockholder, that he delivered the deed to himself as president of the corporation, and accepted it as such president at the date of the deed, does not show delivery, where there is no evidence of any resolution of the corporation or act of the directors authorizing such transaction, nor that any stockholder or officer of the corporation, other than the grantor and his wife, knew of the deed.

4. VOLUNTARY ASSIGNMENTS—*deed filed just before filing deed of assignment is part of same transaction.* If a deed is filed by the grantor just before he files a deed of assignment it is part of the assignment itself, and any preference created thereby would be void under the statute.

5. SAME—*assignee may file bill to have deed set aside.* If a deed is filed by the grantor just before filing a deed of assignment, the assignee has a right to file a bill in equity to determine whether the deed is part of the general assignment, and if so, to have any attempted preference therein declared void, the legal title to the property vested in him as assignee, and to bring it into the assignment proceeding to be administered by the county court.

6. SAME—*county court's jurisdiction is exclusive after property comes into assignee's possession.* While an assignee under a deed of assignment must resort to some court of competent jurisdiction to recover property, yet when it comes into his possession under the provisions of the statute, the county court has exclusive jurisdiction to decide upon the rights, interests and liens of the claimants.

7. SAME—*jurisdiction of county court to direct the assignee to dismiss chancery suit.* If an assignee files a bill in equity to have a deed of his insolvent set aside and the legal title vested in him upon the ground that the deed was part of the general assignment, the county court has jurisdiction to order him to dismiss the suit in

accordance with an agreement of substantially all the creditors who had filed claims, that the interest of the assignee should be conveyed to trustees; and the propriety of such order can only be questioned in a direct proceeding.

8. SAME—*probable termination of suit is not material if county court had jurisdiction to order its dismissal.* If the county court has jurisdiction to order an assignee to dismiss a suit in chancery begun by him to have a certain deed set aside as being a part of the general assignment, the question how the litigation would have terminated is not material in a collateral proceeding by a creditor who seeks to have such deed set aside.

*Taylor* v. *Seiter*, 100 Ill. App. 643, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. B. R. BURROUGHS, Judge, presiding.

FRED B. MERRILLS, (WINKELMAN & BAER, TURNER & HOLDER, R. N. HORNER, and DILL & WILDERMAN, of counsel,) for appellants:

An essential element of a valid delivery is that the grantor shall part with control over the deed and shall not retain a right to reclaim it. *Hawes* v. *Hawes*, 177 Ill. 414; *Weaver* v. *Weaver*, 182 id. 291; *Pruttmann* v. *Baker*, 30 Wis. 644; *Baker* v. *Haskell*, 47 N. H. 479; *Phillips* v. *Houston*, 5 Jones' L. 302; *Stone* v. *Duvall*, 77 Ill. 475; *Younge* v. *Guilbeau*, 3 Wall. 636; *Fischer* v. *Hall*, 41 N. Y. 416; *Porter* v. *Woodhouse*, 59 Conn. 568; *Bank* v. *Phillips*, 34 id. 92.

The conveyance of the land to the creamery company was not for the benefit of the grantee or its creditors, but to prefer certain creditors of Seiter. The intent all along was that the land should be used to pay Seiter's debts—not the debts of the creamery company. Under these circumstances acceptance must be established by the evidence. It cannot be presumed. Am. & Eng. Ency. of Law, (2d ed.) 9-162, and Illinois cases there cited.

After a debtor has determined to make an assignment of his property for the benefit of his creditors, all conveyances, transfers and other dispositions of his property or

assets made in view of his intended assignment, whereby a preference is given, will be held within the prohibition of the statute, and void. *Preston* v. *Spaulding,* 120 Ill. 208; *Bank* v. *Rehm,* 126 id. 461; *Friedlander* v. *Fenton,* 180 id. 312; *Hanford Oil Co.* v. *Bank,* 126 id. 584; *Podolski* v. *Stone,* 186 id. 540; *Sweet, Dempster & Co.* v. *Scherber,* 42 Ill. App. 237.

The assignee cannot attack the assignor's deed to the creamery company. He is not the agent of the creditor. The creditor, only, may attack an illegal preference. *Bouton* v. *Dement,* 123 Ill. 149; *Hanford Oil Co.* v. *Bank,* 126 id. 590; *Ide* v. *Sayer,* 129 id. 235; *Insurance Co.* v. *Swigert,* 135 id. 165; *Young* v. *Clapp,* 147 id. 186; *Smith* v. *Goodman,* 149 id. 80; *Higgins* v. *Lansingh,* 154 id. 329; *Hinkley* v. *Reed,* 182 id. 440; *Young* v. *Stevenson,* 180 id. 614.

The creditor who first files his bill and causes the deed to be set aside will have a prior right to satisfaction. *Cole* v. *Marble,* 98 Ill. 67; *Lyons* v. *Robbins,* 46 id. 276.

NOBLE & SHIELDS, FORMAN & BROWNING, and WILLIAM G. PETTUS, for appellees:

If the deed of Seiter and wife to the Lebanon Dairy and Creamery Company was not delivered long enough before the general assignment to prevent it from becoming a part of the same transaction, this would be of no legal advantage to appellants. In such case, if there were not other equities in favor of defendants to support the deed, the title to the land would have passed to the assignee by the assignment deed, and it is not sought in this proceeding to divest that title.

Where the grantor and the president of the corporation are one and the same person, the court will consider all the evidence as to intention and fact of delivery; and where the evidence of receipt from the grantee by the grantor of the full consideration, the dates of all the documents and the possession of the property support the direct testimony of witness that delivery was made, the deed will be sustained, and not overthrown. Delivery

will be presumed from the concurrent acts of the parties. *Gould* v. *Day*, 94 U. S. 405; *Campbell* v. *Kuhn*, 45 Mich. 516.

The agreement order by the county court, which authorized the dismissal of the suit by Weir, the assignee, against the deed to the creamery company, was based on a subject matter over which it had control and jurisdiction. The assignee has title when a deed is contemporaneously made by the assignor whereby a preference would be given to another. *Davis* v. *Dock Co.* 129 Ill. 180; *Preston* v. *Spaulding*, 120 id. 208; *Freydendall* v. *Baldwin*, 103 id. 325; *Feltenstein* v. *Stein*, 157 id. 19; *Ahlgren* v. *Huntington*, 85 Ill. App. 639.

The county court's discretion in administering an assigned estate will not be interfered with. *Baker* v. *Singer*, 35 Ill. App. 271.

All parties having any possible claim to the title of these lands came into the county court, and thus the county court became possessed of the body of the lands and its action was within its unquestionable jurisdiction. It did not actually require the petition of the creditors that was made, and what the court did was within its statutory power. As we have shown above, a court of equity will not interfere in such a case as this.

If it was intended to complain of that order, the complainant, Baker, and others, the petitioners, were in a position to do so in the county court, and should have asked to have the order changed, and taken an appeal therefrom. This is due to that court and is the only proceeding authorized. *Hanford Oil Co.* v. *Bank*, 126 Ill. 584; *Bank* v. *Rehm*, id. 460.

Mr. Justice Cartwright delivered the opinion of the court:

The circuit court of St. Clair county, upon a hearing of the issues formed under the bill of appellant Joseph Taylor and the intervening petitions of the other appellants against the appellees, dismissed said bill and

intervening petitions, and the Appellate Court for the Fourth District affirmed the decree. This appeal was taken from the judgment of affirmance.

The bill was filed by the appellant Joseph Taylor, a judgment creditor of appellee Henry Seiter, for himself and all other creditors who might be willing to join with him and share the expense of the litigation. The purpose of the bill was to subject certain lands in St. Clair county to the satisfaction of the complainant's judgment. The other appellants are judgment creditors who came into the suit by intervening petitions adopting substantially the averments of the bill and asking for the same relief. By his amended bill the complainant Taylor asked the court to set aside and annul a deed from Henry Seiter and wife to Rufus N. Ramsay; a deed of the same parties to the Lebanon Dairy and Creamery Company; a deed from said creamery company, Henry Seiter and wife, Marshall W. Weir, assignee of Henry Seiter, the Illinois Farm Company and the Equitable Trust Company, to Charles Parsons, Frederick M. Blount and Henry V. Sexton, as trustees, and a deed from the heirs of said Rufus N. Ramsay to said trustees, and to direct the master in chancery to sell the lands described in said deeds to satisfy complainant's judgment.

The evidence established the following facts: Henry Seiter had been engaged in farming on an extensive scale in St. Clair county, and also conducted a creamery and dairy business. He was also a banker, and had one bank at Lebanon, Illinois, which he conducted under the name of Henry Seiter & Co., and another bank at O'Fallon. He concluded to carry on his dairy and creamery business in the name of a corporation, and in August, 1891, he procured a certificate of incorporation under the name of "The Lebanon Dairy and Creamery Company," with a capital stock of $65,000, divided into 650 shares of $100 each. He subscribed for and took 646 of the shares, and the remaining four shares were issued to his former part-

ner, his book-keeper, his hired man and his wife, evidently for the mere purpose of complying with the act concerning corporations. He owned the 750 acres of land in St. Clair county in controversy in this case, and gave an absolute deed, in which his wife joined, of a part of said land to Rufus N. Ramsay, State Treasurer of this State, which was intended as a mortgage to secure Ramsay for money borrowed. It was agreed between Seiter and Ramsay that this deed was not to be recorded, but was to be returned to Seiter after it had fulfilled its purpose. It was not recorded and other collateral was substituted as security, but the deed was retained by Ramsay and not returned. In the summer of 1894 Seiter concluded to increase the capital stock of his creamery company 600 shares, and the increase was effected July 21, 1894. Seiter took all of the additional shares, with the understanding that he was to pay for them by conveying the 750 acres in question to the corporation. Certificates of stock were issued to him, dated July 22, 1894, and on the same day he and his wife made and acknowledged a deed of the lands to the corporation. Seiter kept the deed in his possession and it was not recorded. He testified that this was done because the deed to Ramsay had been made and not returned. The land is worth about $65,000. After the deed was made the land was in the possession of the corporation and used for pasturing cows and other business purposes. Seiter pledged all his stock in the creamery company to St. Louis banks as collateral to his notes. He also put his extensive farming business into corporate form by organizing a corporation called "The Illinois Farm Company." The same persons were stockholders as in the case of the creamery company, and Seiter held all but four shares of the stock. The business was his the same as before the corporations were formed, the other stockholders being merely nominally interested, without substantial right, interest or control. His main purpose was to put his ownership in the form of stock,

so that he could pledge the stock instead of mortgaging the land to borrow money. After the corporations were formed Seiter did business under four different names: First, as Henry Seiter; second, in the banking business as Henry Seiter & Co.; third, in the dairy and creamery business as the Lebanon Dairy and Creamery Company; and fourth, in his farm business as the Illinois Farm Company. The individual, the supposed partnership and the corporations were all, in fact, the same person. Rufus N. Ramsay died in November, 1894, still holding the deed.

Seiter's affairs were considerably involved in the summer and fall of 1894, and on December 8, 1894, he finally decided to make an assignment, under the statute, for the benefit of his creditors. The next day was Sunday, when he could not carry out his intention, but on Monday morning, December 10, he went to Belleville, the county seat of St. Clair county, and made a general assignment to Marshall W. Weir, as assignee. He took with him to Belleville three deeds, one of them being the deed of July 22, 1894, to the creamery company, and the others being deeds to other property in Lebanon, made to other persons, and he then executed the assignment. He went to the recorder's office with these deeds and the deed of assignment, and after having filed the deed to the creamery company and the other deeds for record he filed the deed of assignment. The next day the Equitable Trust Company, representing the sureties on Ramsay's bond, filed for record the deed which had been made to Ramsay. The inventory filed with the deed of assignment included the 1246 shares of capital stock of the creamery company as hypothecated with the St. Louis banks. The creamery company and Illinois Farm Company were indebted to Seiter, as banker, for over-drafts to the amount of over $20,000. Numerous claims were filed in the county court against the assigned estate, including the claim of Ramsay's bondsmen for $261,399.20, and claims of the various St. Louis banks amounting to

199—36

over $100,000. Objections were filed to the claim of the bondsmen, and the assignee, Weir, filed his bill in the circuit court of St. Clair county to set aside the deed from Seiter and wife to Ramsay, the deed of Seiter and wife to the creamery company, and the other deeds filed just before the assignment, as void preferences and to bring the lands into the assignment and under the jurisdiction and control of the county court.

While these matters were in controversy and the litigation was pending, an agreement for a settlement of the conflicting interests was made by nearly all the creditors who had filed claims. The agreement was, that in consideration of the withdrawal of the claims of the bondsmen and banks, amounting to $347,078.02, from participating in the remaining assets, the other creditors should release all claim to the collaterals, lands, stock and other property, including the lands in question, held by said bondsmen and banks as security; that said property should be conveyed to trustees, the claim of the bondsmen scaled to $125,000, and if any surplus should remain after paying the bondsmen and banks it should be paid to the assignee. The agreement was on condition that the over-drafts of the creamery company and farm company should be paid to the assignee. The assignee presented his petition to the county court and asked to be allowed and directed to carry out the agreement. The court, upon a hearing of the petition, found that two hundred and forty-eight out of two hundred and sixty-two general and unsecured creditors who had filed their claims, representing $168,060.10 out of a total of $170,010.84, had signed the agreement, and that it was for the best interest of all the creditors to carry out the proposed compromise, and the court ordered the assignee to carry out the agreement. In pursuance of the order of the county court the agreement was carried out according to its terms. Ramsay's bondsmen and the St. Louis banks withdrew their claims which had been filed in

the county court against the insolvent estate, amounting to $347,078.02. The assignee was paid $20,736.55 for the over-drafts of the creamery company and the Illinois Farm Company on Seiter's bank, and the lands in controversy and other lands and assets of the creamery company and Illinois Farm Company were conveyed by the Illinois Farm Company, the creamery company, the Equitable Trust Company, Henry Seiter and wife, and Weir, the assignee, to Parsons, Blount and Sexton, as trustees, who were to dispose of the property, and after paying expenses were to pay, first, the St. Louis banks the amount due them and to the bondsmen $125,000, to which amount their claim was reduced; second, to pay $20,736.55 to the parties who advanced the same to pay the over-drafts; and third, to pay the balance to the assignee. The complainant Taylor owned certificates of deposit of Seiter's bank and obtained judgment against him for them, upon which execution was issued and returned unsatisfied. He did not file his claim in the county court.

No attack is made upon the deed of assignment, but it is contended that the deed of Seiter and wife to the creamery company was voidable at the instance of creditors because it took no effect until it was filed for record for want of delivery, and took no effect when filed for record because that was done at the time of making the assignment, and was an illegal preference of the St. Louis banks, who held the certificates of stock of the creamery company as collateral security for borrowed money.

The first controversy of counsel is whether the deed was delivered when it was made and acknowledged. Seiter testified that he, as grantor, delivered the deed to himself, as president of the corporation, and received and accepted it as such president at the date of the deed. It was retained in the manual possession and control of the grantor, and there was no resolution of the corporation or act of the directors accepting the conveyance or authorizing the grantor to receive or hold it as president.

There was no evidence that any stockholder other than Seiter and his wife, or any other officer, knew of the deed. It is essential to a valid delivery that the grantor shall part with the possession of the deed and all control over it and shall not retain the right to re-claim it. (*Hawes v. Hawes*, 177 Ill. 409.) The evidence does not show that Seiter, as grantor, parted with all control over the deed, and it must be held that the deed was not delivered before it was filed for record. It is true that the corporation had possession of the land after the date of the deed, but such possession did not confer title or obviate the necessity of a delivery of the deed. Possession may serve as notice of title, and with other facts may constitute part performance of a verbal contract to convey, but it cannot operate as a conveyance. Where there is no delivery a deed cannot take effect and transfer title, and it is ineffective as a deed. The deed was filed for record just before filing the deed of assignment, so that it was a part of the same transaction, and any preference attempted at that time would be void under the statute. Where a creditor executes a general assignment, the entire series of acts performed by him with the intent and purpose of effecting a disposition of all his property for the benefit of his creditors are to be regarded as a single transaction, together constituting the general assignment of his assets under the statute. (*Preston v. Spaulding*, 120 Ill. 208; *Hide and Leather Nat. Bank v. Rehm*, 126 id. 461; *Hanford Oil Co. v. First Nat. Bank*, id. 584.) Unless the transaction was supported by a previous contract to convey the land to the corporation, or by equities in favor of the banks which held the stock as collateral, the assignee had the right to have the attempted preference set aside and the title to the land vested in him for the purposes of the assignment. He filed his bill for that purpose in the circuit court of St. Clair county, and was afterward directed by the county court to dismiss his bill and join in a conveyance of the lands to the trustees

upon the receipt of $20,736.55, the amount of the over-
drafts, in pursuance of the creditors' agreement. It is
manifest that if the county court had jurisdiction to
make any order concerning the subject matter, the order,
whether erroneous or not, could not be questioned collat-
erally by the complainant in this suit. The complainant
never filed his claim against the estate in the county
court, although the intervening petitioners, most of them,
filed their claims there and were parties to that proceed-
ing. The right which he asserts is one which, in the first
instance at least, belonged to the assignee. A debtor
may still prefer one creditor to another, and if the deed
of Seiter and wife to the creamery company was invalid,
it was because it was a part of the general assignment
and gave a preference contrary to the statute.

Section 13 of the act concerning voluntary assign-
ments provides that every provision in any assignment
for the payment of one debt or liability in preference to
another shall be void, and all debts and liabilities within
the provisions of the assignment shall be paid *pro rata*
from the assets thereof. (Hurd's Stat. 1899, p. 173.) The
assignee had a right to file his bill in equity, as he did,
to have the question determined whether the deed to the
creamery company was a part of the general assignment,
and if so, to have the attempted preference declared void,
the legal title to the property vested in him as assignee,
and to bring it into the assignment proceeding to be ad-
ministered by the county court. "That such is the right
and duty of the assignee admits of no doubt. Section 11
of the Voluntary Assignment act is both his warrant and
mandate." (*Preston* v. *Spaulding, supra.*) The assignee
was the proper person to file the bill for the purpose of
setting aside the alleged preference, in order that the
proceeds of the land might be equally distributed, under
the direction of the county court, among the creditors of
Seiter, and all creditors would be bound by the result of
that litigation. If the assignee had succeeded, the pro-

ceeds of the land would have been paid *pro rata* to the creditors who had filed their claims in the county court, and the complainant did not file his claim there, and if the assignee failed in the suit the complainant could not litigate the question again or subject the land by any proceeding to the payment of his judgment. The claim of counsel that the assignee could not attack the alleged illegal preference, and that only creditors could attack it, cannot be sustained. The suit of the assignee was compromised by him in pursuance of the agreement of nearly all the beneficiaries of the suit and the order of the county court. It is insisted that the deed was a void preference, and that the county court had no jurisdiction to make the order under which the bill of the assignee was dismissed and his interest was conveyed to the trustees, and that complainant may assert an individual right, as a creditor, to set aside the preference. In *Preston* v. *Spaulding, supra,* the assignee refused to attack the void preferences and did not seek to recover the assets properly belonging to the assigned estate, and it was held that when the assignee, who took the estate in trust for creditors, neglected or refused to take proper proceedings to protect the trust estate or reduce it to possession, the creditors themselves might come into a court of equity to assert their rights and protect their interests. In this case there was neither neglect nor refusal of the assignee to perform his duty to endeavor to recover all property embraced in the assignment for the benefit of creditors, and his suit was compromised at the instance of the creditors who were beneficiaries under the order of the county court. So far as appears he acted in entire good faith, and the action in the judgment of the creditors and county court was for the best interests of the estate and creditors. The questions settled by the agreement were in litigation. Seiter had agreed to convey the land in payment for the stock of the creamery company, and the corporation had been in possession under that agreement

from the date of the undelivered deed.   Seiter had received the consideration and pledged it to the St. Louis banks for borrowed money.   The consideration for the stock which the banks took was the land for which the deed was made.   It is true that, disregarding mere forms, the different kinds of business were all conducted by Seiter and he was the substantial owner, (*Sands* v. *Potter*, 165 Ill. 397,) but his interest in the land was represented by shares of stock which he pledged to the banks.   In the settlement substantial rights on both sides were surrendered, and the case is not like the one relied upon.

Disregarding, however, the question whether the settlement and order were justified by the facts of the case, if the county court had jurisdiction to act at all in the matter, its order, which has never been reversed or set aside, is binding upon complainant as well as all other creditors.   The ground for insisting that the order was void and without jurisdiction is, that the assignee had not acquired the legal title to the land so as to bring it under the jurisdiction of the county court and enable that court to deal with it.   It is true that the assignee took no legal title to the land transferred by the deed to the creamery company, even if it was to be regarded as a part of the general assignment and in fraud of the statute.   The legal title to part passed to the creamery company and the legal title to the rest was outstanding in Ramsay's heirs, and the county court having no general equitable jurisdiction, could not adjudicate upon the rights of the parties as to whether there was an illegal preference which would avoid the deed.   In such a case an assignee is compelled to resort to a court of general chancery jurisdiction to set aside an unauthorized preference.   (*Preston* v. *Spaulding, supra; Friedman* v. *Podolski*, 185 Ill. 587.)   The right of the assignee in this case did not rest upon a previous fraudulent transfer by Seiter, but on the claim that the delivery of the deed to the creamery company by recording it was a part of the gen-

eral assignment, and the rule stated in *Bouton* v. *Dement*, 123 Ill. 142, that an assignee has no right to impeach or set aside a fraudulent conveyance of property made by the debtor previous to the assignment does not apply. The claim of complainant is the same—that the conveyance was completed by delivery at the time of the assignment. While an assignee must resort to some court of competent jurisdiction to recover property, yet when it comes into the possession of the assignee under the provisions of the statute, the county court has exclusive jurisdiction to decide upon the rights, interests and liens of claimants. (*Freydendall* v. *Baldwin*, 103 Ill. 325; *Hanchett* v. *Waterbury*, 115 id. 220; *Podolski* v. *Stone*, 186 id. 540.) In this case a bill had been filed to set aside the alleged preference and vest title in the assignee, but title had not been vested in him when the order was made. The circuit court therefore could not deal with the legal title, or with the property as such, so as to adjudicate concerning either, but it had jurisdiction over the assignee in respect to the litigation commenced by him in the circuit court, and of any equitable right that vested in the assignee by the assignment, by virtue of the statute. It was in the power of the county court to direct the assignee to commence and prosecute suits for the recovery of property to which he might be entitled as part of the assigned estate. It could scarcely be said that the only path for the court or assignee is to litigate every doubtful claim to the end, and that while the court may direct the prosecution of a suit it can never authorize a settlement of it. We think the county court had jurisdiction to order a settlement of the matters in controversy, on the petition of the assignee, in pursuance of the agreement of substantially all creditors who had filed claims, and the propriety of the order could only be reviewed on error or appeal.

It is agreed by all parties that the conditions upon which the deed was given to Ramsay had been fulfilled;

that Seiter was entitled to a re-conveyance, and that he was the equitable owner of the lands conveyed by it when he agreed to convey to the creamery company and when he subsequently filed his deed for record. The deed from the Ramsay heirs transferred the legal title remaining in them where the beneficial title already was, and if the complainant could not set aside the other deeds he could derive no benefit from that outstanding title. One of the principal claims in support of the complainant's right is, that the claim filed by Ramsay's bondsmen in the county court and objected to by other creditors was illegal; but if the county court had jurisdiction to authorize and approve the settlement, the question how the litigation would have resulted as to that claim is not material. The claims of the banks are admitted to be valid.

The judgment of the Appellate Court affirming the decree of the circuit court is affirmed.

*Judgment affirmed.*